JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Betsy Wolf

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** ~~Attorneys~~ *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

## DEFENDANTS

Temple University

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000, et seq., 29 U.S.C. § 623 et seq.

Brief description of cause:  Plaintiff was discriminated against based on her age, and retaliated against based on her complaints about discrimination.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   2/25/2021

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Elkins Park, PA 19027 _____

Address of Defendant: _____ 1801 N. Broad Street, Philadelphia, PA 19127 _____

Place of Accident, Incident or Transaction: _____ 1801 N. Broad Street, Philadelphia, PA 19127 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/25/2021 _____ *Caren Grant* _____ 205900
_____ _____
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Caren N. Gurmankin _____ , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

☒ Relief other than monetary damages is sought.

DATE: 02/25/2021 _____ *Caren Grant* _____ 205900
_____ _____
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| BETSY WOLF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( X )

| | | |
|---|---|---|
| 02/25/2021 | _[signature]_ | Plaintiff, Betsy Wolf |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| **BETSY WOLF** | : | |
| **Elkins Park, PA 19027** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TEMPLE UNIVERSITY** | : | |
| **1801 N. Broad Street** | : | **JURY TRIAL DEMANDED** |
| **Philadelphia, PA 19127** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Betsy Wolf, brings this action against her former employer, Temple

University ("Defendant").  Despite Plaintiff's positive performance history over thirteen

(13) years of employment, Defendant terminated her employment when she was sixty

seven (67) years old and one of the oldest employees in her department.  Defendant also

terminated Plaintiff, who is Jewish, after she complained that Defendant failed to take

appropriate action when she was targeted by someone putting a swastika by her office.

After Plaintiff was terminated, and complained regarding Defendant's improper conduct,

Defendant further discriminated and retaliated against her by failing to hire her back into

open positions for which she was qualified.

Defendant's discriminatory and retaliatory conduct was in violation of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et seq*. ("Title VII"), the

Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"),

the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and

the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.*

("PFPO").

II.    <u>**PARTIES**</u>

1.      Plaintiff, Betsy Wolf, is an individual and a citizen of the

Commonwealth of Pennsylvania.

2.      Plaintiff was sixty seven (67) years old at the time that Defendant

terminated her employment in June 2018.

3.      Defendant, Temple University, is incorporated in Pennsylvania, with a

principal place of business at 1801 N. Broad Street, Philadelphia, PA 5000 South Broad

Street, Philadelphia, PA 19127.

4.      Defendant is engaged in an industry affecting interstate commerce and

regularly does business in the Commonwealth of Pennsylvania.

5.      At all times material hereto, Defendant employed more than twenty (20)

employees.

6.      At all times material hereto, Defendant acted by and through its authorized

agents, servants, workmen, and/or employees acting within the course and scope of their

employment with Defendant and in furtherance of Defendant's business.

7.      At all times material hereto, Defendant acted as an employer within the

meaning of the statutes which form the basis of this matter.

8.      At all times material hereto, Plaintiff was an employee of Defendant

within the meaning of the statutes which form the basis of this matter.

### III.   JURISDICTION AND VENUE

9.    The causes of action which form the basis of this matter arise under Title VII, the ADEA, the PHRA, and the PFPO.

10.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

11.    The District Court has jurisdiction over Count II (ADEA) pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331.

12.    The District Court has jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

13.    The District Court has jurisdiction over Count IV (PFPO) pursuant to 28 U.S.C. §1367.

14.    Venue is proper in the District Court under 28 U.S.C. §1391(b).

15.    On or about December 3, 2018, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein.  The Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint of Discrimination (with personal identifying information redacted).

16.    On January 21, 2020, Plaintiff filed a second Complaint with the PHRC, and cross-filed the same with the EEOC.  Attached hereto, incorporated herein and marked 8as Exhibit "2" is a true and correct copy of the second Complaint of Discrimination (with personal identifying information redacted).

17.    On or about December 15, 2020, the EEOC issued to Plaintiff a Dismissal

and Notice of Rights for her Complaints of Discrimination.  Attached hereto,

incorporated herein and marked as Exhibit "3" is a true and correct copy of that notice

(with personal identifying information redacted).

18.     Plaintiff has fully complied with all administrative prerequisites for the

commencement of this action.

## IV.    FACTUAL ALLEGATIONS

19.     Plaintiff started working at Defendant's School of Medicine in about

March 2005.

20.     In around December 2015, Plaintiff was promoted into the position of

Senior Administrator, Family and Community Medicine.  She held that position up until

her termination in June 2018.

21.     Around the time that Plaintiff was promoted into the position of Senior

Administrator, Family and Community Medicine, she started reporting to Lisa Fino,

Chief Operating Officer and Thomas Kupp, Executive Director.  Both Fino and Kupp

reported to Larry Kaiser, Dean of School of Medicine.

22.     At all times material hereto, Plaintiff performed her job responsibilities in

a highly competent manner.

23.     On or about November 16, 2017, Plaintiff arrived at work to find a

swastika drawn on the wall next to her office door, right below her nameplate.

24.     As Plaintiff, who is Jewish, was well aware, the swastika was used as a

symbol of the Nazi Party and is a renowned and virulent representation of anti-Semitism.

25.     Plaintiff was extremely shocked and upset by the sight of the swastika,

such that Fino sent her home for the day.

26.     On November 17, 2017, Plaintiff, assuming that Defendant had filed a report with the Philadelphia Police Department regarding the swastika, requested a copy of the same.  Defendant's response was the incident was just "vandalism" and that it had not, and would not be, notifying the Philadelphia Police Department of the same.

27.     On that same day, Defendant contacted Plaintiff to let her know that it was sorry about the "unacceptable discrimination" to which she had been subjected in connection with the swastika, that Defendant's Associate Vice President of Diversity had been notified, and that Plaintiff could utilize Defendant's Employee Assistance Program if she needed to do so.

28.     Approximately five (5) days later, Defendant's Police Department contacted Plaintiff to review the details of the incident with her.

29.     To Plaintiff's information and belief, Defendant interviewed only one other employee in her department, other than Plaintiff, in connection with the swastika incident.

30.     In or around November 2017, Plaintiff contacted the Anti-Defamation League ("ADL") in connection with Defendant's failure to take remedial and/or corrective action regarding the swastika.  The ADL informed Plaintiff that it had advised Defendant regarding Plaintiff's complaints about Defendant's failure to respond appropriately to the swastika.

31.     On or about December 4, 2017, Plaintiff complained to Defendant about the religious discrimination to which she was subjected in connection with both the swastika and Defendant's failure to take the incident seriously.

32.     Plaintiff specifically complained that she had been targeted as a Jewish

employee, that Defendant did not address the situation as the hate crime that it was but, rather, described it as mere "vandalism", and that Defendant failed to address the issue with the staff at Defendant's School of Medicine where Plaintiff worked or with Defendant's community about the same.

33.    Plaintiff further advised Defendant that she had contacted the ADL in connection with Defendant's failure to address the incident properly.

34.    Defendant did not respond to Plaintiff's complaints at that time.

35.    On or about December 12, 2017, Defendant represented that it would look into installing surveillance cameras in the lobby of Plaintiff's building.

36.    Defendant also said that it would meet individually with Plaintiff and the other employees in her department regarding the incident involving the swastika

37.    To Plaintiff's knowledge, Defendant did not install surveillance cameras in the lobby of her building, or even follow up with Plaintiff regarding its representation that it would look into doing so, and it did not meet individually with employees in Plaintiff's department about the swastika incident.

38.    Shortly thereafter, Plaintiff complained to Defendant's President, Richard Englert, that Defendant had failed to respond appropriately in connection with the swastika that she found outside her office, including that it had not taken the incident seriously and, in particular, that it had not taken steps to address the anti-Semitic nature of the incident.

39.    Plaintiff specifically included in her complaint that Defendant had pushed the swastika incident "under the rug", that its response to the same was "lackluster", and that it seemed more important for Defendant to avoid bad press than to keep its own

community safe from racial and ethnic threats and to educate the community about hate crimes such as this one.

40.     Defendant's response to Plaintiff's complaints involved only President Englert letting Plaintiff know that he had been unaware of Plaintiff's experience and that he was sorry about the same.

41.     No one at Defendant followed up with Plaintiff regarding the swastika or her complaints regarding Defendant's failure to take appropriate action regarding the same.

42.     On or about June 7, 2018, Defendant terminated Plaintiff's employment.

43.     Defendant told Plaintiff that the reason for her termination was that her position was eliminated.

44.     When Plaintiff asked whether her termination was due to her age, as she was one of the oldest employees in her department and one of the oldest Senior Administrators in Defendant's School of Medicine, she was told only that Defendant had talked to its lawyers who had approved the decision to terminate her employment, and that it was a budgetary issue.

45.     In the year prior to Plaintiff's termination, Kupp had asked her about her retirement plans.  He said that he was asking in order to be able to plan for the future.

46.     In response to Kupp's question about retirement, Plaintiff said that she did not have plans to retire at that time.

47.     Defendant's stated reason for Plaintiff's termination, that her position was eliminated because of budgetary issues, was pretextual.

48.     Plaintiff was aware that, shortly before her termination, Defendant had

promoted a substantially younger, less qualified employee into the same position that Plaintiff held, that of Senior Administrator, within Defendant's School of Medicine in which Plaintiff worked.

49.     In or around November 2018, Defendant posted an open position of Senior Administrator within its School of Medicine.

50.     Plaintiff applied for the open position of Senior Administrator that Defendant posted in around November 2018.

51.     Plaintiff was qualified for the position of Senior Administrator for which she applied in November 2018.

52.     Other than confirming that Plaintiff's application was received, Defendant did not respond to Plaintiff's application for the Senior Administrator position for which she applied in November 2018.

53.     Defendant did not hire, or even interview, Plaintiff for the Senior Administrator position for which she applied in November 2018.

54.     Defendant did not provide Plaintiff with a reason as to why it failed to hire her into the Senior Administrator position for which she applied in November 2018.

55.     Plaintiff filed her Complaint with the PHRC on December 3, 2018. Defendant was advised of her filing her PHRC Complaint on that same day.

56.     On or about December 11, 2018, Plaintiff applied for two (2) open Senior Administrator positions that Defendant posted.

57.     Plaintiff was qualified for both Senior Administrator positions to which she applied in around December 2018.

58.     Other than confirming that Plaintiff's application was received, Defendant

did not respond to Plaintiff's applications for the Senior Administrator positions for which she applied in December 2018.

59.     Defendant did not hire, or even interview, Plaintiff for the Senior Administrator positions for which she applied in December 2018.

60.     Defendant did not provide Plaintiff with a reason as to why it failed to hire her into the Senior Administrator positions for which she applied in December 2018.

61.     In or around November 2019, Plaintiff applied for an open Senior Administrator position that Defendant posted.

62.     Other than confirming that Plaintiff's application was received, Defendant did not respond to Plaintiff's application for the Senior Administrator positions for which she applied in November 2019.

63.     Defendant did not hire, or even interview, Plaintiff for the Senior Administrator position for which she applied in November 2019.

64.     Defendant did not provide Plaintiff with a reason as to why it failed to hire her into the Senior Administrator positions for which she applied in November 2019.

65.     Plaintiff's age was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including terminating her employment and failing to hire her into open positions.

66.     Plaintiff's complaints of discrimination were motivating and/or determinative factors in connection with Defendant's retaliatory conduct to which Plaintiff was subjected, including terminating her employment and failing to hire her into open positions.

67.     The retaliatory actions taken against Plaintiff after she complained of

discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

68.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I – TITLE VII

69.     Plaintiff incorporates herein by reference paragraphs 1 through 68 above, as if set forth herein in their entirety.

70.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

71.     Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

72.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

73.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

74.     No previous application has been made for the relief requested herein.

## COUNT II - ADEA

75.     Plaintiff incorporates herein by reference paragraphs 1 through 74 above, as if set forth herein in their entirety.

76.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADEA.

77.     Said violations were willful and warrant the imposition of liquidated damages.

78.     Said violations warrant the imposition of punitive damages.

79.     As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

80.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

81.     No previous application has been made for the relief requested herein.

## COUNT III - PHRA

82.     Plaintiff incorporates herein by reference paragraphs 1 through 81 above, as if set forth herein in their entirety.

83.     Defendant, by the above improper and discriminatory acts, have violated the PHRA.

84.     Said violations were intentional and willful.

11

85.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

86.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

87.     No previous application has been made for the relief requested herein.

## COUNT IV - PFPO

88.     Plaintiff incorporates herein by reference paragraphs 1 through 87 above, as if set forth herein in their entirety.

89.     Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PFPO.

90.     Said violations were intentional and willful.

91.     As a direct and proximate result of Defendant's violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

92.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

93.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the ADEA;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(h)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(i)      awarding punitive damages to Plaintiff under Title VII;

(j)      awarding liquidated damages to Plaintiff under the ADEA;

(k)      awarding punitive damages to Plaintiff under the ADEA;

(l)      awarding Plaintiff such other damages as are appropriate under the Title VII, the ADEA, the PHRA, and the PFPO;

(m)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(n)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated:  February 25, 2021          BY:      /s/ Caren N. Gurmankin_____
                                                         Caren N. Gurmankin, Esq. (205900)
                                                         1525 Locust St., 9th Floor
                                                         Philadelphia, PA 19102
                                                         (215) 545-7676
                                                         (215) 565-2853 (fax)

                                                         Attorney for Plaintiff,
                                                         Betsy Wolf

# Exhibit "1"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| **BETSY WOLF** | :        Docket No. |
| v. | : |
| RESPONDENT: | : |
| **TEMPLE UNIVERSITY** | : |

1. The Complainant herein is:

   Name:    Betsy Wolf
   Address:  ████████████████
            Elkins Park, PA 19027

2. The Respondent herein is:

   Names:   Temple University
   Address: 1801 N. Broad Street
            Philadelphia, PA 19127

3. I, Betsy Wolf, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my age (67), and unlawful retaliation because of my complaints of

religious discrimination as set forth below:

### Discrimination and Retaliation

**A. I specifically allege:**

[1]     I was hired by Respondent in or about March 2005.  I had over thirteen

(13) years of service at Respondent.  I consistently performed my job duties in a highly

competent manner, and received positive feedback.

Received
DEC - 3 2018
PA Human Relations Commission
Philadelphia Regional Office

[2]       I last held the position of Senior Administrator.

[3]       I last reported to Lisa Fino (59[1]), Chief Operating Officer, and Thomas Kupp (60), Executive Director.  They reported to Larry Kaiser (66), Dean of School of Medicine.

[4]       In or about December 2015, I began reporting to Fino and Kupp.

[5]       I was one of the oldest employees reporting to Fino and Kupp.

[6]       On or about June 2017, in a meeting with Kupp, Respondent asked me what my retirement plans were.  I had no intentions of retiring.  I understood the question to be discriminatory based on my age.

[7]       On November 16, 2017, when I arrived to my office, I found a swastika drawn on the wall next to my office door, beneath my nameplate.  I began crying.  I was upset and offended by the sight of the swastika drawn on the wall next to my office door, as I am Jewish.

[8]       Others employees gathered around, and Respondent's security and police arrived, along with Fino.  Respondent sent me home, and I received no further communication from Respondent that day.

[9]       On November 17, 2017, I requested a copy of the police report that was filed with regard to the swastika drawn on the wall next to my office door.  I was told that the swastika was simply vandalism, and that Respondent would not inform the Philadelphia Police Department of the incident.

[10]       On November 17, 2017, in an email from Greg Zimmaro (66), Assistant Dean, Human Resources and Administration, copying Fino and Kupp, I was told that Respondent was "very sorry that [I was] subjected to such an unacceptable discrimination issue yesterday."  The email stated that Tiffenia Archie (48), Associate Vice President for Institutional

---

[1] All ages herein are approximations.

Diversity, Equality, Advocacy, and Leadership, was contacted "regarding this unfortunate situation," and Respondent's "employees have available the EAP (Employee Assistance Program) as an additional resource to assist [me] in times such as this."

[11]    I contacted the Anti-Defamation League regarding the swastika drawn on the wall next to my office door, and the Anti-Defamation League contacted Respondent on my behalf regarding Respondent's alleged investigation.

[12]    On November 20, 2017, in a meeting with Dennis _____ (72), Head of Security, I was told that none of the guards on duty saw anything suspicious related to the swastika drawing. The guards' desk was approximately twenty (20) feet from my office door, and guards were at the desk twenty-four (24) hours each day.

[13]    On November 21, 2017, via email, I was asked to call Agoi Ombima (45), Detective, Temple Police Department. When I spoke with Ombima, he asked me if I knew who would do this. To my knowledge, Ombima interviewed only one (1) other employee and asked if that person knew who would draw a swastika next to my office door.

[14]    On December 4, 2017, in a letter to Kaiser, I complained of religious discrimination related to the swastika drawn on the wall next to my office door, and complained that Respondent was not taking the incident seriously. I complained that I was charged a sick day for being sent home after I had discovered the swastika drawn on the wall next to my office door, and that Respondent simply called the incident vandalism when it should have been identified as a hate crime. I complained that I had received little communication from Respondent regarding this incident, and that I was deeply hurt by this incident and Respondent's lack of response. I stated that I had contacted the Anti-Defamation League. I did not receive any response to my letter.

[15]     On December 4, 2017, in a meeting with Ombina, following my letter to Kaiser, I complained that I felt my complaints of religious discrimination were not being taken seriously, and that the incident was not being sufficiently investigated.

[16]     On December 12, 2017, Respondent held a meeting for the employees in my department regarding offensive and discriminatory conduct at Respondent, including the swastika drawing on my office door.  Respondent asked how everyone was feeling.  Stephen Permut (71), Professor, Department of Family and Community Medicine, expressed that he was upset that it took so long for Respondent to investigate the swastika drawing on the wall next to my office door, and that other department employees were not, and should be, part of the meeting.  Fino did not attend the meeting.  Respondent stated that there would be a thorough review of the lobby area and installation of surveillance cameras in the lobby, and that meetings would be set up with each employee to discuss this issue.  To my knowledge, none of this happened.

[17]     On December 15, 2017, Richard Englert (72), President, sent an email to Respondent's employees regarding "the highly offensive racist fliers that were found posted outside [Respondent's] buildings."

[18]     On January 15, 2017, in an email to Englert, in response to his December 15, 2017 email, I complained that: "I was disappointed that [Englert] did not include the incidents of swastikas appearing on the door of a Jewish employee on the Health Sciences Campus and on an RA's door on the Main Campus over the past 2 months.  One of those doors was mine.  The immediate response to that incident was woefully lackluster, unsupportive and frankly appeared to be pushed under the rug.  The Temple police recorded it as a case of criminal mischief and not the hate crime that it truly was and then let any further investigation drop."  I

further complained: "I am more than disappointed in the way this matter has been handled.  It reflects poorly in that it appears to be more important for Temple to avoid bad press than to uphold the principles of tolerance, educate about hate crimes, and keep its own community safe from racial and ethnic threats."

[19]     On January 17, 2018, I received an email from Englert, stating that he "was not aware of this incident," was "sorry that [I] had this experience," and that "[i]t must have been unsettling."

[20]     In or about May 2018, Respondent promoted Erin Coleman (36) to Senior Administrator, the same position I held.

[21]     On June 7, 2018, in a meeting with Kupp and Zimmaro, Respondent terminated my employment, effective June 29, 2018.  The stated reason for my termination was position elimination.  I asked if my termination had to do with my age, as I was one of the oldest employees reporting to Fino and Kupp.  Respondent did not deny that I was one of the oldest employees reporting to Fino and Kupp.

[22]     Respondent's stated reason was false and pretext for age discrimination and/or retaliation because of my complaints of religious discrimination.

[23]     I was the only employee reporting to Fino and Kupp who was terminated effective June 29, 2018.

[24]     Respondent offered no explanation, including the selection criteria, as to why I was terminated and the substantially younger and/or noncomplaining employees were retained.

[25]     I was not provided with any opportunity to remain employed with Respondent.

[26]     I had no performance or disciplinary issues throughout my employment.

[27]     Respondent assigned my job duties to Fino.  I am more qualified and experienced to perform my job duties than Fino.

[28]     On November 23, 2018, I learned that Respondent posted my position, and is seeking to hire a Senior Administrator.

[29]     Respondent did not, contrary to what I was told in my termination meeting, eliminate my position.

[30]     On November 26, 2018, I applied for the posted Senior Administrator position.

[31]     I am more qualified and experienced to perform the Senior Administrator position than any candidate for the Senior Administrator position.

[32]     I was terminated because of my position and from employment because of my age.

[33]     I was terminated because of my position and from employment because of my complaints of religious discrimination.

[34]     Respondent's age discriminatory and retaliatory conduct has caused me emotional distress.

**B.**  Based on the aforementioned, I allege that Respondent has discriminated against me because of my age (67), and retaliated against me because of my complaints of religious discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et*

*seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.*

("PFPO").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices

in violation of:

      **X**      **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):  (a); (d)**

      ____      Section 5.1 Subsection(s) _____

      ____      Section 5.2 Subsection(s) _____

      ____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

      **X**      **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

    6.    The Complainant prays that Respondent be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

    (c) Remedy the discriminatory effect of past practice(s) and procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation

      complained of herein.

    (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

12/3/18
(Date Signed)

(Signature)   Betsy Wolf

Elkins Park, PA 19027

# Exhibit "2"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

### SECOND COMPLAINT

COMPLAINANT:                              :

**BETSY WOLF**                            :          Docket No.

v.                                        :

RESPONDENT:                               :

**TEMPLE UNIVERSITY**                     :

1.  The Complainant herein is:

    Name:       Betsy Wolf

    Address:    ████████████████████
                Elkins Park, PA 19027

2.  The Respondent herein is:

    Name:       Temple University

    Address:    1801 N. Broad Street
                Philadelphia, PA 19127

3.  I, Betsy Wolf, the Complainant herein, allege that I was subjected to unlawful discrimination because of my age (69), and unlawful retaliation because of my complaints of religious discrimination and age discrimination as set forth below.

**Discrimination and Retaliation**

**A. I specifically allege, in addition to that set forth in my first Complaint, including, but not limited to, the following, all of which has occurred since filing my first Complaint:**

[1]        On December 3, 2018, I filed my first Complaint with the PHRC against Respondent.

[2]        On December 11, 2018, I applied for two (2) posted Senior Administrator positions at Respondent.  I was qualified for the positions, as I held the same position for approximately thirteen (13) years before Respondent terminated my employment.

[3]        On November 21, 2019, I applied for the posted Senior Administrator position at Respondent.  I was qualified for the position, as I held the same position for approximately thirteen (13) years before Respondent terminated my employment.

[4]        Respondent failed to hire me into, or interview me for, the Senior Administrator position, for which I was qualified and had applied on November 26, 2018 (as referenced in my first PHRC Complaint).  Other than an email confirming receipt of my application, I received no response to my application.

[5]        Respondent failed to hire me into, or interview me for, the Senior Administrator position because of my age and/or my complaints of religious discrimination and age discrimination.

[6]        Respondent failed to hire me into, or interview me for, either of the Senior Administrator positions, for which I was qualified and had applied on December 11, 2018.  Other than an email confirming receipt of my applications, I received no response to my applications.

[7]     Respondent failed to hire me into, or interview me for, either of the Senior Administrator positions because of my age and/or my complaints of religious discrimination and age discrimination.

[8]     Respondent failed to hire me into, or interview me for, the Senior Administrator position, for which I was qualified and had applied on November 21, 2019. Other than an email confirming receipt of my application, I received no response to my application.

[9]     Respondent failed to hire me into, or interview me for, the Senior Administrator position because of my age and/or my complaints of religious discrimination and age discrimination.

[10]    Respondent hired instead of me noncomplaining and/or younger employees.

[11]    I was more qualified to perform my job duties than the noncomplaining and/or younger employees whom Respondent hired instead of me.

[12]    Respondent assigned my job duties to noncomplaining and/or younger employees.

[13]    I was more qualified to perform my job duties than the noncomplaining and/or younger employees to whom Respondent assigned my job duties.

[14]    Respondent's age discriminatory and retaliatory conduct has caused me emotional distress.

**B.**  Based on the aforementioned, I allege that Respondent has discriminated against me because of my age (69), and retaliated against me because of my complaints of religious discrimination and age discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment

Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

    4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    **X**       **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d)**

    _____      Section 5.1 Subsection(s) _____

    _____      Section 5.2 Subsection(s) _____

    _____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

    5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    **X**       **This charge will be referred to the EEOC for the purpose of dual filing.**

    6.     The Complainant seeks that Respondent be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

    (c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

1/17/2020
(Date Signed)

_Betsy Wolf_
(Signature)   Betsy Wolf

Elkins Park, PA 19027

# Exhibit "3"

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Betsy Wolf**<br><br>**Elkins Park, PA 19027** | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

☐ *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-60156** | **Kurt Jung**<br>**State, Local & Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| [X] | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| [X] | The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*

**12/15/2020**

Enclosures(s)

**Jamie R. Williamson
District Director**

*(Date Issued)*

cc:   **TEMPLE UNIVERSITY**

**Caren Gurmankin, Esq.
Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102**
gurmankin@consolelaw.com
buccieri@consolelaw.com

**Julia M. Melle
Assistant University Counsel
Temple University
300 Sullivan Hall
1330 Polett Walk
Philadelphia, PA 19122**
jmelle@temple.edu