**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

_____   :
                                  :
**BETSY WOLF**                    :
                                  :
                     **Plaintiff,**   :   **CIVIL ACTION NO. 21-866**
                                  :
          **v.**                  :
                                  :
**TEMPLE UNIVERSITY**             :
                                  :   **JURY TRIAL DEMANDED**
                     **Defendant.**   :
_____   :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**


Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:   <u>_/s/ Caren N. Gurmankin_____</u>
      Caren N. Gurmankin, Esquire
      1525 Locust Street, 9th Floor
      Philadelphia, PA 19102
      (215) 545-7676

Dated: December 10, 2021        _Attorney for Plaintiff,_
                                _Betsy Wolf_

## TABLE OF CONTENTS

I.     INTRODUCTION…………………………………………………………………..2

II.    FACTUAL BACKGROUND……………………………………………………....3

    A.  Plaintiff Was An Experienced And Highly Regarded Long-Time Employee………..3

    B.  Plaintiff Complained About Defendant's Failure To Take Seriously A Swastika That Was Drawn Next to Plaintiff's Office (Under Her Nameplate)………………………5

    C.  Defendant Terminated Sixty Seven (67) Year Old Plaintiff And (Eventually) Replaced Her With A Twenty Five (25) Years Younger Individual (Making More Money Than Plaintiff)……………………………………………………………..6

    D.  Defendant Discriminated And Retaliated Against Plaintiff By Failing To Select Her For Open (Senior Administrator) Positions For Which She Applied………………..7

III.   ARGUMENT…………………………………………………………….............. 7

    A.  Summary Judgment Standard of Review…………………………………………7

    B.  Defendant's Motion For Summary Judgment Should Be Denied As There Are Material Facts In Dispute, Namely Whether Plaintiff Was Discriminated Against Based On Her Age And/Or Retaliated Against Based On Her Complaints Regarding Defendant's Discriminatory Conduct……………………………………………8

    C.  Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury Could Conclude that Defendant Discriminated Against Her Based On Her Age…………10

        1.  Plaintiff's supervisor questioned her and other older employees about their retirement plans………………………………………………………………11

        2.  The demographics of the Department Administrators were younger following Plaintiff's termination…………………………………………………………13

        3.  Defendants replaced 67 year old Plaintiff with a twenty five (25) year younger employee…………………………………………………………………14

        4.  Defendant failed to do anything to find a place for Plaintiff, a consistently excellent, thirteen (13) year employee ……………………………………14

        5.  Defendant selected younger employees over sixty seven (67) year old Plaintiff to fill positions for which she was qualified……………………………..16

        6.  Plaintiff has set forth sufficient evidence such that a reasonable jury could conclude that Defendant's asserted reasons for terminating her employment

i

are pretextual.......................................................................17

    (a) Defendant has proffered inconsistent stories as to the identities of the decision-makers regarding Plaintiff's termination......................18

    (b) Defendant does not have a single document regarding the decision to terminate Plaintiff's employment......................................20

    (c) Contrary to Defendant's assertions throughout this case, Plaintiff's position was not eliminated.............................................21

    (d) Defendant terminated Plaintiff's employment despite the fact that there was *no* directive to eliminate any positions or terminate any personnel...................................................................22

    (e) One of Defendant's current defenses, that it decided to terminate Plaintiff (at least in part) because she (allegedly) refused to accept an offer to pick up additional responsibilities, is undermined by discovery in this case...................................................................23

    (f) Defendant failed to take action to ensure that protected characteristics such as age did not enter into the decision to terminate Plaintiff's employment...................................................................24

7. Plaintiff has set forth sufficient evidence such that a reasonable jury could conclude that Defendant's asserted reasons for failing to hire her into an open position following her termination are pretextual.............................25

D. Plaintiff Has Set Forth Sufficient Evidence From Which A Jury Could Conclude That Defendant Retaliated Against Her....................................................26

1. Defendant retaliated against Plaintiff based on her complaints about its age discriminatory conduct.......................................................27

2. There is record evidence from which a jury could conclude that Defendant retaliated against Plaintiff by failing to hire her into an open position based on her complaints about its seriously deficient response to the swastika incident.........................................................................28

3. Plaintiff has set forth sufficient evidence such that a reasonable jury could conclude that Defendants' asserted reasons for terminating her are pretextual.........................................................................30

E. Summary Judgment Cannot Be Granted When Defendant Has Demonstrated Its Untruthfulness Throughout This Litigation...............................................30

IV.     CONCLUSION……………………………………………………………….....31

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. William Paterson College of New Jersey,*
260 F.3d 265 (3d Cir. 2001) ................................................ 26

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................... 7

*Barnes v. Office Depot, Inc.,*
2009 U.S. Dist. LEXIS 109519 (D.N.J. 2009) ........................... 20

*Big Apple BMW v. BMW of North America, Inc.,*
974 F.2d 1358 (3d Cir. 1992) ........................................... 20

*Bradley v. Pittsburgh Bd. of Educ.,*
913 F.2d 1064 (3d Cir. 1990) ........................................... 27

*Brennan v. GTE Government Sys. Corp.,*
150 F.3d 21 (1st Cir. 1998) ............................................ 14

*Bruno v. W.B. Saunders Company et al.,*
882 F.2d 760 (3d Cir. 1989) ............................................ 13

*Burlington Northern and Santa Fe Railway Company v. White,*
126 S.Ct. 2405 (2006) .................................................. 26

*Coney v. NPR, Inc.,*
312 F. App'x 469 (3d Cir. 2009) ........................................ 17

*Coney v. NPR, Inc.,*
2007 U.S. Dist. LEXIS 64602 (E.D. Pa. Aug. 31, 2007) ................... 17

*Crawford v. Verizon Pa., Inc.,*
103 F. Supp. 3d 597 (E.D. Pa. 2015) .................................... 27

*Cullen v. Select Medical Corporation,*
779 Fed. Appx. 929 (3d Cir. 2019) ...................................... 19

*Doe v. C.A.R.S. Protection Plus, Inc.,*
527 F.3d 358 (3d Cir. 2008) ............................................ 7

*Downs v. Anapol Schwartz, PC,*
2015 U.S. Dist. LEXIS 106147 (E.D.Pa. Aug. 12, 2015) .................. 26

iv

*Eno v. Lumberman's Merchandising Corp.*,
  2012 U.S. Dist. LEXIS 54319 (E.D.Pa. Apr. 18, 2012) .......................................... 20

*Ezold v. Wolf, Block, Schorr and Solis-Cohen*,
  983 F.2d 509 (3d Cir. 1992) .......................................... 12

*Farrell v. Planters Lifesavers Company*,
  206 F.3d 271 (3d Cir. 2000) .......................................... 26

*Fogelman v. Mercy Hosp., Inc.*,
  238 F.3d 561 (3d Cir. 2002) .......................................... 26

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994) .......................................... 11, 21, 22

*Goosby v. Johnson & Johnson Med., Inc.*,
  228 F.3d 313 (3d Cir. 2000) .......................................... 8

*Jackson v. University of Pittsburgh*,
  826 F.2d 230 (3d Cir. 1987) .......................................... 8

*Jalil v. Avdel Corporation*,
  873 F.2d 701 (3d Cir. 1988) .......................................... 7

*Johnson v. Verizon Servs. Corp.*,
  2017 U.S. Dist. LEXIS 59472 (E.D.Pa. Apr. 18, 2017) .......................................... 20

*Krouse v. American Sterilizer Co.*,
  126 F.3d 494 (3d Cir. 1997) .......................................... 26

*Krys v. Aaron*,
  112 F. Supp. 3d 181 (D.N.J. 2015) .......................................... 17

*Leone v. Air Products & Chemicals, Inc.*,
  2008 WL 1944104 (E.D.Pa. 2008) .......................................... 7

*Liddick v. Tritt*,
  2017 U.S. Dist. LEXIS 141926 (M.D. Pa. Aug. 31, 2017) .......................................... 27

*Mahler v. Cmty. College of Beaver County*,
  43 F. Supp. 3d 495 (W.D.Pa. 2014) .......................................... 21

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1983) .......................................... 10

*Mehr v. Atl. City*,
    2014 U.S. Dist. LEXIS 121869 (D.N.J. Sep. 2, 2014) ......................................... 27

*Meiselman v. Hamilton Farm Golf Club, LLC*,
    2014 U.S. Dist. LEXIS 153109 (D.N.J. Oct. 28, 2014) ....................................... 17

*Muldowne v. K-Mart Corp.*,
    2013 U.S. Dist. LEXIS 164502 at *32 (M.D.Pa. Sept. 24, 2013) .......................... 29

*Ness v. Marshall*,
    660 F.2d 517 (3d Cir. 1981) ......................................................................... 8

*Oakley v. Orthopaedic Associates of Allentown, Ltd. et al.*,
    2010 U.S. Dist. LEXIS 103230 (E.D.Pa.2010) ................................................. 8

*Potoski v. Wilkes Univ.*,
    692 F. Supp. 2d 475 (M.D.Pa. 2010) ............................................................. 21

*Remp v. Alcon Labs.*,
    2016 U.S. Dist. LEXIS 38342 (E.D.Pa. Mar. 24, 2016) ..................................... 26

*Romantine v. CH2M Hill Engineers, Inc.*,
    2010 U.S. Dist. LEXIS 136011 (W.D.Pa. 2010) ............................................... 10

*Santiago v. City of Vineland*,
    107 F. Supp. 2d 512 (D.N.J. 2000) ............................................................... 28

*Sarullo v. U.S. Postal Service*,
    352 F.3d 789 (3d Cir. 2003) ....................................................................... 10

*Sheridan v. E.I. Dupont de Nemours & Co.*,
    100 F.3d 1061 (3d Cir. 1996) ........................................................................ 9

*Shimell v. De Lage Landen Financial Services*,
    2008 WL 1774129 (E.D.Pa. 2008) ................................................................. 7

*Simpson v. Kay Jewelers*,
    142 F.3d 639 (3d Cir. 1998) ....................................................................... 10

*Sorba v. Pennsylvania Drilling Co.*,
    821 F.2d 200 (3d Cir. 1987) ....................................................................... 10

*St. Mary's Honor Ctr v. Hicks*,
    509 U.S. 502 (1993) ............................................................................... 9,10

*Stewart v. Rutgers University*,
  120 F.3d 426 (3d Cir. 1997) ............................................................. 7, 8

*Stratton v. The Dep't for the Aging*,
  132 F.3d 869 (2d Cir. 1996) ................................................................ 13

*Tenant v. Peoria & P.U. Ry. Co.*,
  321 U.S. 29 (1944) ............................................................................. 17

*Tomasso v. Boeing Co.*,
  445 F.3d 702 (3d Cir. 2006)............................................................. 20, 21

*United States v. Jannotti*,
  673 F.2d 578 (3d Cir. 1982) ................................................................ 17

*Vandegrift v. Atl. Envelope Co.*,
  2004 U.S. Dist. LEXIS 11359 (E.D.Pa. Apr. 12, 2004) ......................... 14

*Williams v. Philadelphia Housing Authority Police Department*,
  380 F.3d 751 (3d Cir. 2004) ................................................................ 26

**Statutes**

  29 U.S.C. § 623 ............................................................................. 1, 10

  42 U.S.C. §2000 ................................................................................. 1

  43 P.S. §951, et seq. ........................................................................... 1

  § 9-1100, et seq ................................................................................. 1

**Rules**

  Fed.R.Civ.P. 56 ............................................................................. 7, 28

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| _____ : | |
| **BETSY WOLF** : | |
| : | **CIVIL ACTION NO. 21-866** |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **TEMPLE UNIVERSITY** : | |
| : | **JURY TRIAL DEMANDED** |
| : | |
| **Defendant.** : | |
| _____ : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Betsy Wolf, through her undersigned counsel, hereby opposes the Motion for Summary Judgment filed by Defendant on her claims that they discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.* ("PFPO").

Respectfully submitted,

Dated: December 10, 2021          BY:      /s/ Caren N. Gurmankin
                                                       Caren N. Gurmankin, Esq.
                                                       Console Mattiacci Law, LLC
                                                       1525 Locust Street, 9th Floor
                                                       Philadelphia, PA 19102

1

## I.    __INTRODUCTION__

Defendant terminated Plaintiff, a sixty seven (67) year old, thirteen (13) year employee with a consistently excellent performance record *after* her supervisor asked her about her retirement plans and *after* she complained about Defendant's poor handling of a situation in which a swastika was drawn right next to her office door. (Plaintiff is Jewish.)  Defendant, whose witnesses admitted that *older employees only* were asked when they planned to retire, retained younger employees (while terminating Plaintiff); eventually replaced Plaintiff with an employee who is twenty five (25) years younger than her (and paid the younger replacement significantly more money, in a case in which Defendant is asserting that it terminated Plaintiff for financial/cost-cutting reasons); failed to hire, or even consider, Plaintiff for open positions for which she was qualified and, filled those positions with substantially younger individuals.

Defendant now asserts that it is entitled to judgment as a matter of law on all of Plaintiff's claims, despite record evidence that demonstrates Defendant's discriminatory bias towards Plaintiff based on her age, and retaliatory bias based on her complaints regarding Defendant's response (or lack thereof) to the swastika incident and her complaints about its age discriminatory conduct.  That evidence includes, but is certainly not limited to, the following, all of which is *undisputed*:

- Defendant terminated Plaintiff when she was sixty seven (67) years old and after thirteen (13) years of undisputedly excellent performance;

- There is *zero* documentation regarding the decision to terminate Plaintiff's employment;

- Plaintiff's supervisor, and one of the decision-makers regarding her termination, asked Plaintiff and other older employees about their retirement plans;

- The demographics of Plaintiff's group has become significantly younger following her termination;

2

- Plaintiff was the only one terminated in her group and one of the only older (over the age of sixty (60)) employees in her group who had said that she did not have plans to retire;

- Plaintiff was replaced by an individual twenty five (25) years younger than she was;

- Despite that performance was *not* a factor in the decision to terminate Plaintiff, Defendant failed to hire, or even consider, her for any open positions following her termination;

- Plaintiff complained, repeatedly, including to Defendant's highest-level executives, regarding its seriously deficient response to the swastika incident.

The material facts of this case are very much in dispute, as are the motivations and credibility of the witnesses upon whose testimony Defendant relies to explain its actions. As set forth below, in Plaintiff's Statement of Additional Disputed Facts, she clearly meets her burden at this stage of presenting sufficient evidence from which a reasonable jury could conclude that Defendant discriminated against Plaintiff based on her age, and retaliated against her based on her complaints about its age discriminatory conduct and her complaints about their failure to properly address the swastika incident. Furthermore, Defendant did *not* move on Plaintiff's claims that it retaliated against her in connection with its failure to select her for open positions after her termination based on her complaints about Defendant's age discriminatory conduct.

As such, Defendant's present Motion should be denied in its entirety, and Plaintiff should be permitted to present her case to a jury.

## II.   <u>FACTUAL BACKGROUND</u>[1]

### A.   <u>Plaintiff Was An Experienced And Highly Regarded Long-Time Employee</u>

Plaintiff was born in December 1950. (SOAF ¶ 16)  She became employed at Defendant

---

[1] Plaintiff has submitted a Response to Defendant's Statement of Undisputed Facts ("PRDF") and a separate Statement of Additional Disputed Material Facts that Preclude Summary Judgment ("SOAF"), which contain specific citations to supporting evidence in the record.

in March 2005 as an Administrator, specifically overseeing the Department of General Internal

Medicine, the residency practice of general internal medicine, rheumatology; endocrinology,

dermatology, and hospital medicine. (SOAF ¶¶ 18-19)  Plaintiff was promoted into the Senior

Administrator position for the Department of Family Medicine in May 2016, as Defendant

determined that she had already been performing the responsibilities of that role. (SOAF ¶¶ 20-

21)  As Senior Administrator, Plaintiff essentially did everything "other than doctor work".[2]

(SOAF ¶ 22)

       Plaintiff consistently demonstrated excellent performance and was highly regarded,

including by her supervisors; and, by the staff and doctors with whom she worked, as evidenced

by, *inter alia*, her performance reviews. (SOAF ¶¶ 23-52)  Her 2016 Performance Review

included the following comments:

> Betsy has been through a number of transitions over the past year.  Her wealth of
> experience in operations has served her well, and made her move into Family Medicine
> relatively seamless.  Despite the challenges in Family Medicine, Betsy has done an
> outstanding job working through the issues while staying focused on the ultimate client –
> the patient.  Betsy – thank you for your willingness to be flexible.  I look forward to
> working with you in FY17.
>
> Betsy continues to ensure that the key financial metrics are met, despite at times, difficult
> pushback in the department.  She always keeps the patient first and looks for
> opportunities to improve the patient experience.  In her time in Operations she helped
> with Quality Initiatives that have now carried over into her role in Family Medicine.  She
> is instrumental in ensuring quality initiatives are carried out in the department.
>
> Betsy is always patient centered.  She easily adapts to any situation and identifies
> resolutions that are consistent with Temple's core mission.

(SOAF ¶¶ 27, 29, 33)

---

[2] Plaintiff was fully in charge of the budget; hiring/firing of employees; she oversaw the Department's supplies;
worked with Information Technology; working with the City of Philadelphia, including the City's Vaccines for
Children Program, including keeping very strict records and monitoring the vaccines; she oversaw the supplies that
the Department purchased; she worked with the front desk. (SOAF ¶ 22)

Out of thirteen (13) Competencies listed on Plaintiff's 2016 Performance Review, she was rated "Exceeds Expectations" on eight (8) of them and as "Meets Expectations" on the remaining five. (SOAF ¶ 32)

Plaintiff's 2017 Performance Review (her last before her June 2018 termination) was similarly complimentary.  Her overall rating was "Exceeds Expectations"; comments included,

> Betsy has exceeded expectations, managing the Department through a period of continued change – including the planned retirement of the Chairperson, and a practice move from the MOB to Jones Hall.  Betsy – I appreciate all that you do for the Department of Family Medicine and its patients.

(SOAF ¶ 36)

Out of thirteen (13) Competencies listed on Plaintiff's 2017 Performance Review, she was rated "Exceeds Expectations" on eight (8) of them; "Significantly Exceeds Expectations" on one (1) of them; and, "Meets Expectations" on four (4) of them. (SOAF ¶ 41)

According to Thomas Kupp, Senior Vice Dean for Finance and Administration for Defendant's School of Medicine and Plaintiff's direct supervisor, based on Plaintiff's 2016 and 2017 performance reviews, she was the kind of employee whom Defendant would want to retain. (SOAF ¶ 43)  According to Lisa Fino, Chief Operating Officer  ("COO") and Kupp's subordinate to whom Plaintiff had an indirect reporting relationship, Plaintiff was "absolutely" an asset to Defendant. (SOAF ¶ 50)

**B.  Plaintiff Complained About Defendant's Failure To Take Seriously A Swastika That Was Drawn Next to Plaintiff's Office (Under Her Nameplate)**

In mid-November 2017, Plaintiff arrived at work to find a swastika drawn on the wall next to her office door, under her nameplate. (PRDF ¶ 26; SOAF ¶ 100)  She was, understandably, extremely upset about the same. (PRDF ¶ 27)  Defendant was never able to determine who was at fault. (PRDF ¶ 26)  Over the next two (2) months, as Defendant failed to take action regarding the swastika, Plaintiff complained – to the Anti-Defamation League (who,

in turn, reached out to Defendant); to the Dean of the School of Medicine, Larry Kaiser; and, to

Defendant's President, Richard Englert. (PRDF ¶¶ 30-32)  In her communications to Dean

Kaiser and President Englert, Plaintiff complained regarding Defendant's deficient, "lackluster",

and "unsupportive" response to what she considered to be a hate crime based on her being

Jewish, including Defendant's lack of action and lack of communication with Plaintiff (and other

employees regarding the issue). (PRDF ¶¶ 31-32)

### C. Defendant Terminated Sixty Seven (67) Year Old Plaintiff And (Eventually) Replaced Her With A Twenty Five (25) Years Younger Individual (Making More Money Than Plaintiff)

On June 7, 2018, Defendant notified Plaintiff that her position (Senior Administrator for

Family Medicine) was being eliminated and, as such, that her employment was being terminated.

(PRDF ¶ 23; SOAF ¶ 243)  Her termination letter said that, "due to department restructuring,

your position will be eliminated" effective June 29, 2018 and that "this decision is not based on

performance". (SOAF ¶ 243)  In her termination meeting, Plaintiff was told only that the reason

for her termination was due to financial reasons. (SOAF ¶ 235)

Despite Defendant's representation to Plaintiff about her position being eliminated,

Plaintiff's Senior Administrator responsibilities survived her termination. (SOAF ¶¶ 216-217)

While COO Fino (eight (8) years younger than Plaintiff) temporarily handled Plaintiff's

administrator responsibilities for Family Medicine, Defendant, eventually, selected Amala Davis,

an individual who was then forty four (44) years old (twenty five (25) years younger than

Plaintiff), to fill the position of Senior Administrator for Family Medicine and Dermatology.

(SOAF ¶¶ 271, 286)  The position was not posted and Davis did not apply for it. (SOAF ¶ 286)

Davis' salary upon her promotion was increased to fifteen thousand dollars ($15,000) more than

Plaintiff's was at the time of her termination. (SOAF ¶ 287, 297)

Plaintiff also applied for open Senior Administrator positions (the same position that she held as of the time of her termination) at Defendant. (PRDF ¶ 75)  Defendant filled at least one (1) of those positions with a substantially younger individual. (SOAF ¶¶ 76, 300)  Defendant did not make any effort to find an alternate position for Plaintiff as of the time of her termination, or at any time after that, despite knowing that she was applying for open positions after her termination. (SOAF ¶¶ 218, 230-233, 261-262, 264)

## III.   ARGUMENT

### A.  Summary Judgment Standard of Review

Summary judgment is to be used sparingly in employment discrimination cases. *Doe v. C.A.R.S. Protection Plus, Inc*., 527 F.3d 358, 369 (3d Cir. 2008).  It may only be granted "…if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The employer retains the burden of persuading the Court that, "even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor."

At the summary judgment stage, the role of the trial judge is to determine whether or not there is a genuine issue, as "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Leone v. Air Products & Chemicals, Inc*., 2008 WL 1944104, *1 (E.D.Pa. 2008) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)).  This standard is to be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Shimell v. De Lage Landen Financial Services*, 2008 WL 1774129, *1 (E.D.Pa. 2008), (quoting *Stewart v. Rutgers University*, 120 F.3d 426, 431 (3d Cir. 1997)).

"When the defendant's intent has been called into question, the matter is within the sole province of the factfinder." *Jalil v. Avdel Corporation*, 873 F.2d 701, 707 (3d Cir. 1988).  As the Third Circuit has noted, "because intent is a substantive element of the cause of action— generally to be inferred from the facts and conduct of the parties—the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility." *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). At the summary judgment stage, "all that is required [for a non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth." *Oakley v. Orthopaedic Associates of Allentown, Ltd. et al.*, 2010 U.S. Dist. LEXIS 103230, *3 (E.D.Pa.2010) (*Jackson v. University of Pittsburgh*, 826 F.2d 230, 233 (3d Cir. 1987)).

### B. Defendant's Motion For Summary Judgment Should Be Denied As There Are Material Facts In Dispute, Namely Whether Plaintiff Was Discriminated Against Based On Her Age And/Or Retaliated Against Based On Her Complaints About Defendant's Discriminatory Conduct

The single most important facts in this matter are unquestionably in dispute – whether Plaintiff's age, her complaints regarding Defendant's age discriminatory conduct, and/or her complaints regarding Defendant's deficient response to the swastika incident played a role in the decision to terminate her employment.  Plaintiff believes this to be true, while Defendant disagrees.  The Third Circuit urges particular caution about granting summary judgment to an employer when intent is at issue, particularly in employment discrimination cases. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000); *see also Stewart v. Rutgers Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (explaining that the summary judgment standard is to be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues.").  That is because "credibility determinations, the weighing of the evidence, and

8

the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.  It follows logically, then, that watching the witnesses testify at trial is critical to this analysis.  Indeed, as the Third Circuit concluded, "[A[ finding of discrimination is at bottom a determination of intent.  In making that determination, the jury must perform its traditional function of assessing the…credibility of the witnesses through observation of both direct testimony and cross-examination at trial…This is uniquely the role of the factfinder, not the court." *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1071-1072 (3d Cir. 1996).

At this stage, the Court is required to draw every inference in Plaintiff's favor. *C.A.R.S.*, 527 F.3d at 362.  As such, the Court must recognize that when Defendant's witnesses testify, at trial, (presumably) that Plaintiff was not terminated for discriminatory and/or retaliatory reasons, the jury may not believe their testimony.  Defendant's witnesses' actions on the witness stand may reflect doubt or deception in the juror's minds.  If the jury thinks a decision maker is lying when she says the decision was not motivated by a protected trait or protected activity, the jury may on that basis ***alone*** conclude that there was civil rights violation. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 510-511 (1993).  Only the jury should be tasked with weighing factual disputes and contradicting testimonies, and for deciding whether Defendant's witnesses answered questions honestly.  Therefore, Defendant's Motion for Summary Judgment should be denied because the most central facts in this matter are, undisputedly, in dispute.  This is a case that a jury must decide in accordance with the Seventh Amendment of the United States Constitution's right to a jury trial, and efforts by companies to deprive individuals of that right in civil rights cases are inappropriate.

**C.** **Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury**
**Could Conclude that Defendant Discriminated Against Her Based On Her Age**

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.

§623(a)(1).[3]  Plaintiff's claims of age discrimination are analyzed pursuant to the burden-shifting

test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983).  First, Plaintiff must

establish a *prima facie* case by proffering sufficient evidence from which a jury could determine

that:  (1) she is a member of the protected class, i.e., at least forty years of age; (2) she was

qualified for the position; (3) she suffered an adverse employment decision; and, (4) under

circumstances raising an inference of discriminatory action. *Sarullo v. U.S. Postal Service*, 352

F.3d 789, 797 (3d Cir. 2003); *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 n.5 (3d Cir. 1998).

Once Plaintiff establishes her *prima facie* case of age discrimination, the employer must

produce evidence of a legitimate, nondiscriminatory reason for the adverse actions at issue. *St.*

*Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506-509 (1993). If the employer is able to meet its

burden, then the plaintiff will be able to defeat summary judgment simply by demonstrating

evidence from which a jury could conclude that the employer's stated reason is a pretext for

discrimination. *Id*. at 507.  At summary judgment, the issue "is whether [the plaintiff] has

pointed to evidence of inconsistencies and implausibilities in the employer's proffered reasons

for [the employment actions] which *could* support an inference that the employer did not act for

nondiscriminatory reasons." (emphasis included). *Sorba v. Pennsylvania Drilling Co.*, 821 F.2d

200, 205 (3d Cir. 1987) (*citing Chipollini v. Spencer Gifts*, 814 F.2d 893, 900 (3d Cir. 1987)).  In

---

[3] The same legal standards and analysis are applicable to claims under both the ADEA and the PHRA. *Glanzman v.*
*Metropolitan Management Corporation*, 391 F.3d 506 (3d Cir. 2004).

other words, Plaintiff can defeat summary judgment by pointing to some evidence from which a rational factfinder could reasonably either disbelieve the employer's articulated explanation or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

It appears that Defendant admits that Plaintiff has established her prima facie case of age discrimination and is disputing only whether Plaintiff can point to evidence from which a jury could conclude that its stated reasons for the adverse employment actions at issue are pretext for discrimination. Although Defendant is not disputing Plaintiff's prima facie case of age discrimination, she has set forth evidence sufficient to demonstrate Defendant's age bias both in the termination of her employment and in its failure to select her for an open position after her termination and to demonstrate that Defendant's stated reasons are pretextual. As such, summary judgment on Plaintiff's age discrimination claims should be denied.

### 1. <u>Plaintiff's supervisor questioned her and other older employees about their retirement plans</u>

During Plaintiff's performance review in 2017, the year before her termination, her supervisor, Kupp, asked her about her retirement plans. (SOAF ¶ 53) According to Fino, other older employees (over the age of sixty (60)), reported to her that Kupp asked them about their retirement plans as well.[4] (SOAF ¶¶ 68, 71, 88-91) Kupp agreed that, generally speaking, retirement is limited to those that are older than fifty (50) years of age; that, during his employment at Defendant, no one younger than their late fifties had ever advised of their

---

[4] Fino testified that the older employees told her that they found Kupp's questions about their retirement plans to be "odd" and "a little strange", and that they "were a little put out" by the same. Fino did not recall whether she ever reported to the Zimmaro, the highest-level HR employee in the School of Medicine that Kupp was questioning older employees about their retirement plans. (SOAF ¶¶ 88-90, 92)

intention to retire; and, that, during his entire career, he was not aware of anyone younger than their late fifties advising of their intention to retire. (SOAF ¶¶ 96-98)  Kupp further acknowledged that one of the factors that he would consider when planning for the future of his organization at Defendant is how long he thinks that an employee is going to work at Defendant. (SOAF ¶ 99)

Kupp's questioning older employees, including Plaintiff, about their retirement plans and his expressed beliefs about retirement, especially in the context of sixty seven (67) year old Plaintiff being terminated (and, eventually replaced by an individual twenty five (25) years younger) "may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." *Romantine v. CH2M Hill Engineers, Inc.*, 2010 U.S. Dist. LEXIS 136011 (W.D.Pa. 2010) (*quoting Walden*, 126 F.3d at 521)); *see also Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 546 (3d Cir. 1992) ("Evidence of discriminatory atmosphere may be relevant because it tends 'to add color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.").

As of May 2018, out of thirteen (13) Senior Administrators, eight (8) were sixty (60) years of age or older, and of those eight (8), six (6) had advised Kupp of their intention to retire within the next one (1) to three (3 years. (SOAF ¶¶ 64-66, 74)  Plaintiff was one of only two (2) Senior Administrators sixty (60) years and older who did ***not*** inform Kupp of her intention to retire.[5] (SOAF ¶¶ 53-54, 64)  Kupp's conduct towards Plaintiff and other older employees and his admission that he would consider how long he believes that an employee is going to work at Defendant, in the context of all of the other record evidence of age discrimination in this matter,

---

[5] The other Senior Administrator (sixty (60) years of age or older) who did not inform Kupp of her intention to retire was sixty (60) years old, seven (7) years younger than Plaintiff. (SOAF ¶¶ 64, 74)

may very well lead a jury to conclude that his questions about retirement plans were not simply an effort to engage in innocuous succession planning, as Defendant tried to argue in its present Motion, but, rather, evidence of age discriminatory bias on his part.

### 2.   The demographics of the Department Administrators were younger following Plaintiff's termination

As of May 1, 2018 (the month before Plaintiff's termination), the youngest Senior Administrator was forty three (43) years old. (SOAF ¶ 74)  There were three (3) Senior Administrators in their forties (43; 44, 49); two (2) in their fifties (53; 52); and, eight (8) in their sixties (62; 66; 68; 63; 60; 67; 67; 67). (SOAF ¶ 74)  Of the Senior Administrators as of May 2018, Plaintiff was one of the oldest; the only one over the age of sixty (60) who had not yet announced her intention to retire over the next one (1) to three (3) years; and, the only one to be terminated at that time. (SOAF ¶¶ 53-54, 64, 74)

Approximately two (2) years later, the demographics of the Department Administrators looked a good deal different.  Added to the group were (as of 2020) a thirty (30) year old; a thirty seven (37) year old[6]; a fifty five (55) year old; and, a forty five (45) year old. (SOAF ¶ 77) Included in those that were subtracted from the group were (as of 2018) sixty seven (67) year old Plaintiff (terminated); a sixty eight (68) year old (as of 2018) (retired); and, a sixty seven (67) year old (as of 2018) (retired); a sixty six (66) year old (as of 2018) (retired). (SOAF ¶¶ 16, 74-75)

Evidence from which a jury can conclude that bias is in the selection process is evidence of intentional discrimination. *See Bruno v. W.B. Saunders Company et al.*, 882 F.2d 760, 767 (3d Cir. 1989) (Statistical evidence used to bolster the plaintiff's case that the defendants' articulated

---

[6] This is Erin Coleman who, shortly before Plaintiff was terminated, was hired to be the Senior Administrator of Orthopedics and who had no business experience as an Administrator prior to her hire. (PRDF ¶ 48)

reason for an individual employment decision is a pretext is relevant); *Stratton v. The Dep't for the Aging*, 132 F.3d 869 (2d Cir. 1996); *Brennan v. GTE Government Sys. Corp.*, 150 F.3d 21, 28 (1st Cir. 1998)(Data showing a disproportionate number of terminated older employees is probative of age discrimination).

### 3. Defendants replaced 67 year old Plaintiff with a twenty five (25) year younger employee

After Plaintiff's termination, according to Defendant, Fino, who was eight (8) years younger than Plaintiff, took over her administrator responsibilities for Family Medicine. (SOAF ¶¶ 12, 16, 236-237)  *See Larison v. FedEx Corp. Servs.*, 2017 U.S. Dist. 90372 (E.D.Pa. June 13, 2017)(plaintiff satisfied the fourth element of her *prima facie* case by showing only that her replacement was seven (7) years younger than she was).  While reassigning Plaintiff's responsibilities to an employee eight (8) years younger would alone be sufficient to demonstrate age discrimination, Defendant's age discriminatory conduct in connection with replacing Plaintiff did not end there.  In 2020, Defendant promoted then forty four (44) year old Amala Davis to into the position of Senior Administrator for Family Medicine and Dermatology[7]. (SOAF ¶¶  287-288)  Davis was twenty five (25) years younger than Plaintiff. (SOAF ¶¶ 16, 272)  Fino had been discussing the open position of Senior Administrator for Family Medicine and Dermatology with Davis since 2019. (SOAF ¶¶ 284-285)  *See Vandegrift v. Atl. Envelope Co.*, 2004 U.S. Dist. LEXIS 11359 (E.D.Pa. Apr. 12, 2004)(plaintiff established a *prima facie* case of age discrimination where the replacement was nineteen (19) years younger).

### 4. Defendant failed to do anything to find a place for Plaintiff, a consistently excellent, thirteen (13) year employee

---

[7] In November 2020, just about two (2) months after Davis was promoted into the position, some of her responsibilities for Dermatology were decreased. She was no longer responsible for the Dermatology staff at all because they became part of a hospital-based billing department or the clinic, or the staff that support the clinic. (SOAF ¶ 297)

According to **Defendant's** witnesses, Plaintiff was an excellent employee. (SOAF ¶¶ 23-52)  The same is evidenced by, *inter alia*, her performance reviews; by the reference letters that she was given after her termination; and, by the deposition testimony of her supervisors. (*Id.*)  According to **Defendant**, her termination had nothing to do with her performance. (SOAF ¶ 213)  And yet, Defendant did not do anything to try to find Plaintiff an alternative position when it terminated her employment. (SOAF ¶¶ 262-265)  A jury could certainly conclude that the reason why Defendant no longer wanted this **undisputedly** dedicated, long-term employee who was a consistently good performer and, accordingly, made absolutely no effort to find her another position within the entire organization, was because of her age.  That is especially likely given that it is undisputed that Defendant (including Kupp and Greg Zimmaro, Defendant's Assistant Dean of Human Resources ("HR") and Administration) **knew** that Plaintiff was applying for positions following her June 2018 termination. (SOAF ¶ 266)

Indeed, Defendant had multiple opportunities to retain Plaintiff and/or bring her back into Senior Administrator positions (i.e., the same position that she held since 2016 through her termination in June 2018) and it repeatedly failed to do so.  According to Defendant's witnesses, the combined position of Senior Administrator for Family Medicine and Dermatology was created as of the time that Plaintiff was notified of her termination on June 7, 2018. (SOAF ¶ 240)  Defendant failed to discuss that position with Plaintiff at around the time of her termination. (SOAF ¶¶ 230-233)  Defendant never even told Plaintiff that the combined Senior Administrator position for Family Medicine and Dermatology had actually been created (which would have at least given her the opportunity to express her interest in the same and keep her employment with Defendant).[8] (SOAF ¶ 264)

---

[8] Indeed, if, at any point, Fino or anyone else at Defendant had said something to Plaintiff that they were combining positions, that she was going to need to take over Dermatology and Family Medicine together and handle both of

Plaintiff applied for three (3) open Senior Administrator positions following her termination. (PRDF ¶ 75)  Defendant filled at least one of those positions (Senior Administrator for Psychiatry) but did not consider Plaintiff for the same, and did not even mention her name to the Chair of the Psychiatry Department.  Fino discussed the open position of Senior Administrator for Family Medicine (Plaintiff's role) and Dermatology with the employee (then forty four (44) year old Amala Davis) who was subsequently promoted into that role in 2019 (a time when Plaintiff was still applying for open positions with Defendant).  No one at Defendant considered Plaintiff for that role. (SOAF ¶ 262, 299)

Neither Kupp nor Fino made any efforts to help Plaintiff find a job within Defendant after the decision had been made to terminate her employment. (SOAF ¶ 219)  After Plaintiff was terminated, Fino never had discussions with anyone at Defendant about bringing Plaintiff back into an open position; Fino never even reached out to Plaintiff after her termination. (SOAF ¶¶ 262, 264)  After Plaintiff was terminated, Kupp never talked to Fino about the possibility of rehiring Plaintiff in any capacity. (SOAF ¶ 263)

Given Plaintiff's performance record and her supervisors' opinions of her performance, the questions that the jury should be able to consider in connection with her age discrimination claims include:  why would Defendant *not* want that employee back?  Why would Defendant fail to hire her into open positions?  A reasonable factfinder (jury) could conclude that the answer is: her age.

### 5.  <u>Defendant selected younger employees over sixty seven (67) year old Plaintiff to fill positions for which she was qualified</u>

Not only did Defendant fail to hire, or even consider, sixty seven (67) year old Plaintiff

---

those departments' administrative responsibilities or that she was going to lose her job, she would have taken the combined position.  No one ever did. (SOAF ¶ 226)

for open positions subsequent to her termination despite her consistently good performance with

Defendant, it hired (substantially) younger employees to fill those positions.  For the position of

Senior Administrator for Psychiatry, Defendant selected an employee who was fifteen (15) years

younger than Plaintiff. (SOAF ¶ 77, 301)  Neither Fino nor Kupp even bothered to mention

Plaintiff to the Department Chair as a possibility for the position (despite the fact that Defendant

knew that she had applied for the same). (SOAF ¶ 303, 308) To fill the position of Senior

Administrator for Family Medicine and Dermatology (which, of course, included Plaintiff's

position/responsibilities as of the time of her termination), Defendant selected a twenty five (25)

year younger employee.  Defendant did not even think about Plaintiff for that position. (SOAF ¶¶

262, 265)

### 6.  **Plaintiff has set forth sufficient evidence such that a reasonable jury could conclude that Defendant's asserted reasons for terminating her employment are pretextual**

As set forth in detail below, Plaintiff has demonstrated evidence demonstrating weakness,

implausibilities, inconsistencies, incoherencies, and contradictions such that a jury could

disbelieve Defendants' proffered explanation for terminating Plaintiff's employment and/or

failing to select her for an open position subsequent to her termination, or believe that the real

reason for each of those adverse actions was her age.[9]

---

[9] Defendant's argument that Plaintiff cannot demonstrate pretext because she "did not engage an expert to reassess or challenge Mr. Kupp's testimony concerning the existence of the shortfalls in the budget, the need for layoffs, or other budget-related measures" is nonsensical and utterly without basis. Def.'s Mot. p. 25.  First, that assertion suggests, completely incorrectly, that a plaintiff can *never* demonstrate pretext unless she retains an expert witness to opine as to the defendant's asserted legitimate, non-discriminatory reasons.  That is absurd and utterly baseless.  Second, if this Court accepts Defendant's argument, that Plaintiff cannot demonstrate pretext because she did not retain an expert to assess the credibility and the testimony of a key witness in this matter, that would place an expert in the role of the factfinder, i.e., assessing the credibility of the witnesses and opining as to the same.  That is completely undermined by established case law in this Circuit.  Testimony encompassing credibility determinations impermissibly encroaches on the jury's "vital and exclusive function to make credibility determinations," *Coney v. NPR, Inc.,* 2007 U.S. Dist. LEXIS 64602, at *32-33 (E.D. Pa. Aug. 31, 2007) (aff'd 312 F. App'x 469, 474 (3d Cir. 2009))  Questions of credibility, truthfulness, and intent are not proper subjects for expert testimony as these are "classic jury questions." *Krys v. Aaron*, 112 F. Supp. 3d 181, 203 (D.N.J. 2015); *see e.g. Coney v. NPR, Inc.*, 312 F. App'x 469, 474 (3d Cir. 2009) ("absent unusual circumstances, expert [] testimony concerning truthfulness or credibility of a witness is

**(a) Defendant has proffered inconsistent stories as to the identities of the decision-makers regarding Plaintiff's termination**

The following chart delineates the inconsistent stories that Defendant has proffered

throughout this case as to who made the decision to terminate Plaintiff's employment:

| Source | Defendant's Articulated Reasons Regarding Identity of Decision-Maker |
|---|---|
|  |  |
| Defendant's Responses to Plaintiff's Interrogatories – Set 1 (verified by Greg Zimmaro) | Fino and Kupp, in consultation with Zimmaro, decided to lay off Plaintiff |
| Deposition of Greg Zimmaro | Kupp, Fino, and Dr. Savoy made the decision |
| Deposition of Tom Kupp | Fino and Zimmaro made the recommendation to terminate Plaintiff's employment, and Kupp approved the recommendation (pending Dean Kaiser and HR approval) |
| Deposition of Lisa Fino | She was not involved in the decision to terminate Plaintiff's employment (and was told about it by Kupp after the decision had already been made) |
| Deposition of Margot Savoy | She was notified about the decision to terminate Plaintiff's employment in early June (very shortly before the date on which Plaintiff was notified), after the decision had already been made (and was not given any information about why the decision was made) |

(SOAF ¶¶ 228, 241-242, 245, 247, 248)

Defendant cannot decide on whether Kupp had authority to make termination decisions.

Kupp testified that he did not have the right to terminate anyone, or lay anyone off. (SOAF ¶

299); Defendant asserts in its Motion that, among Kupp, Zimmaro, and Fino, Kupp was the only

---

inadmissible because it invades the jury's province to make credibility determinations"); *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (en banc) ("credibility determinations are for the jury"); *Krys v. Aaron*, 112 F. Supp. 3d 181, 203 (D.N.J. 2015) ("intent fails to constitute a proper subject for expert testimony"); *Meiselman v. Hamilton Farm Golf Club, LLC*, 2014 U.S. Dist. LEXIS 153109, at *2 (D.N.J. Oct. 28, 2014) ("experts may not testify as to a party's subjective motivations or intent, as such issues do not require specialized knowledge or expertise beyond the reach of an average person"). "The very essence of [the jury's] function is to select from among conflicting inferences and conclusions which it considers most reasonable." *Tenant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944).

one who could make layoff decisions (subject to the approval of the Dean and University HR).

Def.'s Mot. p. 12.  Defendant's witnesses cannot even agree on whether the Dean of the School

of Medicine, Larry Kaiser, needed to approve the termination.  According to Kupp, Kaiser **had**

to approve the termination decision. (PRDF ¶ 58)  According to Kaiser, he did **not** need to

approve termination decisions (other than for those employees who reported directly to him, and

Plaintiff did not). (PRDF ¶ 59)

Defendant's ever-changing representations as to the identity of the decision-makers

regarding Plaintiff's termination is evidence of pretext. [10]  *See Fuentes*, 32 F.3d 7591.  Where, as

here, Plaintiff has set forth evidence that requires the fact-finder to make determinations as to

credibility, Defendant's Motion for Summary Judgment must be denied.  In *Cullen v. Select*

*Medical Corporation*, 779 Fed. Appx. 929 (3d Cir. 2019), the Third Circuit held that the District

Court's grant of summary judgment to the defendant was in error in a case in which there were

inconsistencies both in the defendant's asserted reasons for terminating the plaintiff as well as

---

[10] Apparently recognizing, correctly, that the inconsistent testimony of its witnesses is fatal to its present attempt to get this case dismissed on summary judgment, Defendant attempted to get ahead of this issue in its Motion, asserting that there were "minor inconsistencies in the testimony of Mr. Kupp, Mr. Zimmaro and Ms. Fino regarding the precise role each played leading up to the decision to lay off Plaintiff" but that they agree on "key facts related to Plaintiff's layoff". Def.'s Mot. p. 26.  Notwithstanding Defendant's efforts to get this Court to ignore the fact that ***its own witnesses cannot agree on who made the termination decision***, the same is clearly evidence demonstrating weakness, implausibilities, inconsistencies, incoherencies, and contradictions such that a jury could disbelieve Defendant's proffered explanation for terminating Plaintiff's employment or believe that the real reason was Plaintiff's age.  The fact that there may be other "key facts" on which these three (3) witnesses did manage to agree (including, apparently, that Kupp was the "boss" of them) is beside the point (there is no requirement that a plaintiff in an employment discrimination matter demonstrate inconsistencies in connection with every conceivable fact in a case) and does not detract from this strong evidence of pretext.

Similarly, Defendant "acknowledges the discrepancy" between Kaiser and Kupp's testimony as to whether or not Kaiser needed to approve terminations. Def.'s Mot. p. 13, FN 13.  Defendant's assertion that this "discrepancy is understandable and does not implicate anyone's credibility" is flat out wrong.  That is ***exactly*** the type of evidence that demonstrates weakness, implausibilities, inconsistencies, incoherencies, and contradictions such that a jury could disbelieve Defendant's proffered explanation for the adverse actions at issue, or believe that the real reason for the same was because of her age.  The credibility of Plaintiff and Defendant's witnesses is not only at issue, it is central to Plaintiff's claims and Defendant's defenses.  That is exactly why Plaintiff should be permitted to present her case to the jury, so that the factfinder can determine who is telling the truth about the motivation behind the adverse employment actions at issue in this case.

the identity of the decision-makers involved in the termination decision (as well as the asserted

reasons for termination).  *See also Barnes v. Office Depot, Inc.*, 2009 U.S. Dist. LEXIS 109519

(D.N.J. 2009) (*citing Big Apple BMW v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d

Cir. 1992)).

### (b) Defendant does not have a single document regarding the decision to terminate Plaintiff's employment

According to Defendant's witnesses, there is *zero* documentation regarding the decision

to terminate Plaintiff's employment, including the reasons why the decision was made. (SOAF ¶

195)  Zimmaro, the top HR executive for Defendant's School of Medicine, who, according to

Defendant, was involved in the decision to terminate Plaintiff's employment, testified as follows:

> Q:     Have you ever seen any documentation up through today that lays out the
> rationale or the reasons why the decision was made to terminate Betsy Wolf?
>
> A:     No.

(SOAF ¶ 196)

At his deposition, Zimmaro was unable to point to a single document to support his testimony

that Plaintiff's age was not a factor in the decision to terminate her employment. (SOAF ¶ 203)

*See Johnson v. Verizon Servs. Corp.*, 2017 U.S. Dist. LEXIS 59472 (E.D.Pa. Apr. 18,

2017)(finding that there was a genuine dispute of material fact as to pretext and denying

summary judgment where there was a "lack of documentation concerning [the plaintiff's]

termination…" and where the Court "only has before it dueling narratives provided…as to the

motivation for [the plaintiff]'s termination").  The lack of any supporting documentation is

evidence of pretext. *See Eno v. Lumberman's Merchandising Corp.*, 2012 U.S. Dist. LEXIS

54319, **17-18 (E.D.Pa. Apr. 18, 2012)(lack of documentation on alleged performance

deficiency demonstrates pretext).   Inconsistencies in the process demonstrate pretext. *Tomasso*,

445 F.3d at 707.

### (c)  <u>Contrary to Defendant's assertions throughout this case,<br>Plaintiff's position was not eliminated</u>

Defendant told Plaintiff when it terminated her employment, and has asserted throughout this case, that her position was eliminated.  Undermining its assertion is the undisputed fact that *all* of Plaintiff's responsibilities survived her termination.  According to Defendant, Plaintiff's job responsibilities were reassigned to Fino.  Moreover, Defendant (eventually) promoted another (twenty five (25) year younger) employee into the position of Senior Administrator for Family Medicine (Plaintiff's role) and Dermatology.  In other words, there was never *not* an employee of Defendant handling Plaintiff's administrator responsibilities for Family Medicine. *See Potoski v. Wilkes Univ.*, 692 F. Supp. 2d 475 (M.D.Pa. 2010)(concluding that a jury could find that the defendant's "reorganization defense" was not credible and that the "re-designation of job titles" was a way to replace older workers with younger ones, and, as a result, denying the defendant's summary judgment motion); *Mahler v. Cmty. College of Beaver County*, 43 F. Supp. 3d 495 (W.D.Pa. 2014)(citing to *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64-65 (2d Cir. 1995)(whether position had been eliminated was a question of fact that should have been determined by the jury where the defendant asserted that the plaintiff's position was eliminated as a result of a reorganization and combined into other positions, with other tasks and a salary change) and *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1239-40 (10th Cir. 2002)(whether the defendant eliminated the plaintiff's job was a disputed issue of material fact)).

Evidence contradicting the core reason for the proffered reason demonstrates pretext. *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). *See also Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) (listing "inconsistencies" and "contradictions" in employer's proffered reason as evidence of pretext).  When, as here, there is evidence that Defendant's asserted reason for terminating Plaintiff's employment, that her position was eliminated, is false, Defendant cannot

possibly make an argument with any legitimacy that a factfinder could not reasonably disbelieve Defendant's proffered reason, or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### (d) Defendant terminated Plaintiff's employment despite the fact that there was *no* directive to eliminate any positions or terminate any personnel

Defendant has asserted that it eliminated Plaintiff's position, and terminated her employment, generally due to financial/budgetary issues.  Yet, there was **never** a directive to any of the departments that a position had to be eliminated and there was **never** a directive to any of the departments that any personnel had to be terminated. (SOAF ¶¶ 188-189)  Moreover, the issues that, according to Defendant, resulted in the decision to terminate Plaintiff's employment in 2018 (finances; how to meet budgets; how to cut expenses; how to be more operationally efficient; how to increase the volume of patients being seen, etc.) were nothing new. (SOAF ¶¶ 176-182)  Indeed, Defendant's key witnesses (Kupp; Fino; Zimmaro) all testified that, throughout their employment, there were constantly discussions about these issues. (*Id*.) The discussions about these topics in 2018 were consistent with prior discussions about these topics, and they had been a focus of discussion since at least the time that Kupp started at Defendant in 2003. (SOAF ¶ 179)

A jury could certainly conclude that, in a situation in which there was **no** directive to terminate an employee or eliminate a position, and Defendant did it anyway, Defendant's asserted reason(s) for terminating Plaintiff's employment are pretextual, and that the real reason was her age.  That is especially the case where Defendant: terminated the sixty seven (67) year old, one of the oldest employees in the group, and one of the oldest employees in the group who,

unlike her colleagues in their sixties, did ***not*** advise of her plan to retire in the near future; and, then ended up (re)filling her position because her responsibilities were never eliminated.

> **(e)** **One of Defendant's current defenses, that it decided to terminate Plaintiff (at least in part) because she (allegedly) refused to accept an offer to pick up additional responsibilities, is undermined by discovery in this case**

In its present Motion, Defendant asserts that Kupp considered, in the context of the decision to terminate Plaintiff's employment, that Plaintiff was (allegedly) "unwilling or unable to take on more responsibility." Def.'s Mot. p. 11.  This assertion refers to a discussion that Fino had with Plaintiff in around February 2018 (about four (4) months prior to Plaintiff's termination) in which she asked Plaintiff what she thought about picking up the administrator responsibilities for the Dermatology Department in addition to her responsibilities for Family Medicine.  In response, Plaintiff simply requested that Fino hold off to have a conversation with the new Chair of Family Medicine, who was starting in March, because the new Chair had a very large agenda and expected that Plaintiff would be a full-time administrator for Family Medicine.[11]  Fino never got back to Plaintiff on this issue. (SOAF ¶ 135)

Defendant has seized upon that discussion to create a fiction that, in February 2018, it offered Plaintiff a newly created, combined position of Senior Administrator for both Family Medicine and Dermatology and that , when Plaintiff (allegedly) outright refused that offer (i.e., to take on additional responsibilities/another Department), Defendant considered her inability/unwillingness to do so in connection with her termination.

---

[11] Plaintiff's expressed concerns to Fino were consistent with what had happened previously with Plaintiff's position of Senior Administrator for Family Medicine.  Before she was promoted into the position, one Senior Administrator had handled both Family Medicine and a second department, Emergency Medicine, but that was changed (such that Plaintiff handled only Family Medicine) because of a determination that the previous administrator had too much to handle with both departments and could not do it all. (PRDF ¶ 14)

This argument is undermined by record evidence in this case.  First, as Plaintiff described, Defendant *never* offered her the position. (SOAF ¶ 135)  Second, according to Defendant's witnesses, the position of Senior Administrator for Family Medicine and Dermatology was not actually created until around the same time as the decision to terminate Plaintiff's employment (i.e., early June 2018). (SOAF ¶¶ 167-175, 239-241)  Third, according to Defendant's witnesses, as of February 2018, a decision had not yet been made about Plaintiff picking up another department. (SOAF ¶¶ 155, 156)

Fourth, the testimony of Defendant's witnesses (e.g., Kupp and Fino) on the issue of whether Plaintiff was actually offered a job of Senior Administrator for Family Medicine and Dermatology in around February 2018 and whether the job actually existed as of February 2018 is extremely convoluted and nonsensical. (See SOAF ¶¶  111, 117-118, 120-127, 145-146)  Fifth, there is *no* documentation regarding: any decision to combine the administrator roles for Family Medicine and Dermatology; discussions about offering Plaintiff the role; the discussion that Fino had with Plaintiff; that Plaintiff was ever offered the role, etc.  (See SOAF ¶¶ 128-132, 153) Sixth, Defendant never told Plaintiff

### (f) <u>Defendant failed to take action to ensure that protected characteristics such as age did not enter into the decision to terminate Plaintiff's employment</u>

Defendant's top HR executive (for its School of Medicine), Zimmaro, agreed that there are managers who may have a bias against older employees even if they do not expressly state that they have that bias. (SOAF ¶79)  And yet, Zimmaro did not take steps to discover anything about the decision-making process that resulted in the decision to terminate the employment of sixty seven (67) year old Plaintiff.  As he stated, Kupp was his "boss" and "he doesn't need to tell me." (SOAF ¶ 192)  Zimmaro further testified that the reason that Kupp did not need to tell

him about the decision-making process or how the decision was made to terminate Plaintiff's employment was because he did not have authority over Kupp and finances were not Zimmaro's area. (SOAF ¶ 193)  All Zimmaro did was to review the spreadsheet that he put together for Defendant's Employee Relations (which included the names of employees with the same title as Plaintiff, Senior Administrator, and their dates of birth; years of service; position title; ID Number; and, department(s)) to see if any red flags jumped out at him in terms of protected characteristics like age. (SOAF ¶¶ 186-187)

When Defendant failed to even ask the decision-maker for the rationale as to why Plaintiff was selected for termination (and when there is no documentation regarding the decision or the rationale for the same, as set forth in Section III.C.6.(b) above), it cannot with any legitimacy assert that, as a matter of law, this Court should find that age discriminatory bias was not a factor in the adverse employment action at issue.

### 7.   **Plaintiff has set forth sufficient evidence such that a reasonable jury could conclude that Defendant's asserted reasons for failing to hire her into an open position following her termination are pretextual**

Defendant cannot with any legitimacy assert a non-discriminatory reason for failing to hire Plaintiff into open positions when, according to its own witnesses, it failed to even consider Plaintiff for any open position (including the position of Senior Administrator for Psychiatry, into which Defendant placed a fifteen (15) year younger individual, and the position of Senior Administrator for Family Medicine and Dermatology, into which Defendant promoted a twenty five (25) year younger individual).

Fino testified that she never raised the possibility of offering Plaintiff the position of Senior Administrator for Family Medicine and Dermatology in discussions about promoting the twenty five (25) year younger individual into that position. (SOAF ¶ 298)

**D. <u>Plaintiff Has Set Forth Sufficient Evidence From Which A Jury Could Conclude That Defendant Retaliated Against Her</u>**

There is evidence from which a jury could conclude that Plaintiff was subjected to retaliation based on her complaints regarding Defendants' discriminatory conduct.  To establish a claim of retaliation, a plaintiff must show:  (1) that she engaged in protected activity; (2) that her employer took an adverse employment action; and, (3) a causal link between the protected activity and the employer's adverse employment action. *Fogelman v. Mercy Hosp., Inc.*, 238 F.3d 561, 567-568 (3d Cir. 2002).[12]

To demonstrate Plaintiff's engagement in protected activity, she must show that she opposed conduct, or participated in an inquiry into conduct, that he reasonably believed to be unlawful under the anti-discrimination statutes at issue in this case.  To establish this element, a plaintiff "need not show that the underlying conduct about which [he] complained had actually been violation of" the anti-discrimination laws.  As to the second element of Plaintiff's retaliation claim, an action is considered materially adverse when "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Company v. White*, 126 S.Ct. 2405, 2415-2416 (2006).  Finally, [a] plaintiff may establish a causal link between a protected activity and the employer's adverse action through temporal proximity alone if the timing is 'unusally suggestive' of a retaliatory motive." *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 760 (3d Cir. 2004); *Krouse v. American Sterilizer Company et al.*, 126 F.3d 494, 503 (3d Cir. 1997).  "When the temporal proximity is not so close as to be unduly suggestive, [the Third Circuit has] recognized that timing plus other evidence may be an appropriate test." *Abramson v. William Paterson College of New*

---

[12] The analysis for retaliation claims under Title VII, the PHRA, and the PFPO are identical. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Remp v. Alcon Labs.*, 2016 U.S. Dist. LEXIS 38342, *23 (E.D.Pa. Mar. 24, 2016); *Downs v. Anapol Schwartz, PC*, 2015 U.S. Dist. LEXIS 106147, *30 (E.D.Pa. Aug. 12, 2015).

*Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). *See also Farrell v. Planters Lifesavers Company*, 206

F.3d 271 (3d Cir. 2000)("a plaintiff may array upon a broad array of evidence to" show a causal

link for the purposes of establishing retaliation).  The Third Circuit has said that, "[a]lthough

timing and ongoing antagonism have often been the basis of a causal link, our case law has allowed

a plaintiff to substantiate a causal connection for the purposes of the prima facie case through other

types of circumstantial evidence to support that inference." *Farrell*, 206 F.3d at 280-281.

Here, it appears that Defendant is contesting only the last element of Plaintiff's *prima*

*facie* case of retaliation, i.e., a causal connection between Plaintiff's protected activity and

Defendant's adverse actions.

### 1. <u>Defendant retaliated against Plaintiff based on her complaints about its age discriminatory conduct</u>

Defendant did ***not*** move for summary judgment on Plaintiff's claim that it failed to hire

her into open positions (including the position of Senior Administrator for Psychiatry for which

she applied and the position of Senior Administrator for Family Medicine and Dermatology into

which Defendant promoted Davis) following her termination based on her complaints regarding

its age discriminatory conduct. (*See* Docket No. 1, Plaintiff's Complaint at ¶¶ 55-64; 67)

Because Defendant has not moved for summary judgment on this claim, its request that this

Court dismiss this action in its entirety is inappropriate. *See* Defendant's Motion for Summary

Judgment and Proposed Order (Docket No. 16).[13]

---

[13] *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069-70 (3d Cir. 1990) ("in the absence of a formal motion for summary judgment, … entry of summary judgment [] was unwarranted."); *Crawford v. Verizon Pa., Inc.*, 103 F. Supp. 3d 597, 611 (E.D. Pa. 2015) (where defendant "failed to move for summary judgment as to [plaintiff's] constructive discharge claim," court denied summary judgment and allowed same to "go to a jury."); *Liddick v. Tritt*, 2017 U.S. Dist. LEXIS 141926, at *48-49 (M.D. Pa. Aug. 31, 2017) ("because the defendants have outright failed to move for summary judgment on the retaliation claim against [them], this claim should be allowed to proceed"); *Mehr v. Atl. City*, 2014 U.S. Dist. LEXIS 121869, at *24-25 n.9 (D.N.J. Sep. 2, 2014) (denying motion for summary judgment with respect to plaintiff's claims which "defendants fail[ed] to move against—or even mention").

Plaintiff has set forth her prima facie case of retaliation in connection with her complaints of age discrimination, based on her filing of her PHRC Complaint on December 3, 2018 in which she alleged, *inter alia*, that Defendant discriminated against her based on her age, and Defendant's subsequent failures to hire her for open positions.[14]  Defendant has failed to set forth any legal argument which could conceivably allow this Court to conclude that no issues of material fact exist as to Plaintiff's claims that Defendant failed to hire her for open positions based on her complaints about its age discriminatory conduct and that Defendant is entitled to judgment *as a matter of law* on that claim. *See* Fed. R. Civ. P. 56(c). *See Santiago v. City of Vineland,* 107 F. Supp. 2d 512, 552-53 (D.N.J. 2000) ("[i]t is the *moving party's burden to demonstrate that it is entitled to summary judgment.*  This is an affirmative obligation of the moving party." Summary judgment cannot be granted based upon an 'implication.'") (emphasis in original).

### 2.  There is record evidence from which a jury could conclude that Defendant retaliated against Plaintiff by failing to hire her into an open position based on her complaints about its seriously deficient response to the swastika incident[15]

Defendant's Motion on this claim rests almost entirely on the deposition testimony of its witnesses who claim that they were not upset by Plaintiff's complaints by Defendant's failure to address the swastika incident.  The jury must assess the credibility of the witnesses and the

---

[14] Defendant's assertion in its present Motion that "[i]t is unclear whether she is asserting a claim for retaliation under the ADEA" and that, if she is, the same "fails at the prima facie stage because she never asserted any predicate complaints related to age" is baffling. Def.'s Mot. p. 24, FN 18.  Defendant was clearly aware of Plaintiff's December 3, 2018 PHRC Complaint in which she complained of age discrimination in connection with her termination; it admitted to the same in its Answer to the Complaint. *See* Docket No. 1, Pl. Compl. at ¶ 15 and Docket No. 7, Defendant's Answer and Affirmative Defenses at ¶ 15.  Moreover, in Defendant's Position Statement responding to her PHRC Complaint, Defendant asserted that, "Temple did not discriminate or retaliate against Complainant on the basis of her age or *her complaints of religious and/or age discrimination*…" and "There is no evidence that decision-makers retaliated against Complainant based on *her complaints of religious discrimination and/or age discrimination*." (Emphasis added.)

[15] Defendant questioned whether Plaintiff has alleged "religious-based discrimination" as part of her Complaint is perplexing. Def.'s Mot. p. 21, FN 15.  Defendant's confusion on this point is perplexing, as Plaintiff clearly did not allege religious discrimination in her Complaint.

record evidence to determine whether that is, in fact, true. Defendant is seeking to usurp the role of the jury in asking this Court to accept as a matter of law that the deposition testimony of its witnesses is true. Defendant, the moving party, cannot rely on its own presentation of evidence where the question of fact at issue turns on the credibility of its own witnesses. *See*, *e.g., Muldowne v. K-Mart Corp.,* 2013 U.S. Dist. LEXIS 164502 at *32 (M.D.Pa. Sept. 24, 2013).

Moreover, Plaintiff has set forth record evidence from which a jury could conclude that Defendant terminated her based on her complaints about its deficient response to the swastika incident. Here, Defendant terminated Plaintiff's employment just a few months after she made complaints about its failure to properly address the swastika incident. (SOAF ¶¶ 103, 104, 242) And, according to Kupp, Defendant never considered terminating Plaintiff prior to Spring 2018 (i.e., just a few months after she complained, repeatedly, regarding Defendant's response to the swastika incident). (SOAF ¶ 183) After Plaintiff's termination, Kupp became aware that she had filed complaints in connection with her termination. (SOAF ¶ 270) Despite her undisputedly excellent performance and her long tenure with Defendant, he made no efforts to find another job within Defendant. (SOAF ¶¶ 218, 230-233, 264) A jury could conclude that the reason for the same was because of a retaliatory bias based on her complaints.

Furthermore, when Zimmaro learned, from Kupp, of the decision to terminate Plaintiff's employment, he, ***admittedly***, did not do anything to ascertain whether or not her complaints about Defendant's failure to take appropriate action in connection with the swastika incident was a factor in that decision. (SOAF ¶ 198) Also according to Zimmaro, Plaintiff's January 2018 email to Defendant's President constituted a complaint that Defendant handled the swastika incident poorly and that she was dissatisfied with its response. (SOAF ¶ 105)

**3.  Plaintiff has set forth sufficient evidence such that a reasonable jury could conclude that Defendants' asserted reasons for terminating her are pretextual**

For the reasons set forth above in Section III.C.6 and III.C.7, a jury could conclude that Defendant's asserted reasons for terminating the employee who made complaints about its discriminatory conduct (when there was no directive to terminate any employees or eliminate any positions) was pretextual.

**E.  Summary Judgment Cannot Be Granted When Defendant Has Demonstrated Its Untruthfulness Throughout This Litigation**

Defendant, and its witnesses, have repeatedly demonstrated their untruthfulness throughout this litigation.  By way of example only, and without limitation, *see, e.g.*, Section ___regarding the inconsistencies in the testimony of Defendant's own witnesses as to the identity of those who made the decision to terminate Plaintiff's employment.  By way of further example, Kupp testified that Kaiser told him that his contract was not renewed and that the Board was not happy with his performance with regard to the finances of the health system and, as a result, wanted a change in direction; Kaiser said that Kupp's testimony was not true. (SOAF ¶¶ 8-10) In connection with Davis' promotion into the position of Senior Administrator for Family Medicine and Dermatology, Kupp testified that Fino and Zimmaro made the recommendation and Kupp approved it; Fino testified that Kupp and Zimmaro made the decision; and, Zimmaro testified that the Chairs of Family Medicine and Dermatology, in concert with Kupp, made the decision. (SOAF ¶¶ 289-291)

Summary judgment cannot be granted when the motivation and credibility of Defendants' witnesses are clearly and squarely in dispute, as they are here. *E.g., Muldowney,* 2013 U.S. Dist. LEXIS 164502 at *32 (movant for summary judgment cannot rely solely on its own presentation of evidence where the question of fact at issue turns exclusively on the

credibility of the movant's own witnesses).

## IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, as well as the existence of disputed facts as stated in Plaintiff's accompanying Statement of Additional Disputed Material Facts, Plaintiff respectfully requests that this Court deny Defendant's present Motion in its entirety, and enter the proposed Order submitted herewith.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

Dated: December 10, 2021          BY:     <u>/s/ Caren N. Gurmankin</u>
                                                        Caren N. Gurmankin, Esq.
                                                        Console Mattiacci Law, LLC
                                                        1525 Locust Street, 9th Floor
                                                        Philadelphia, PA 19102

                                                        Attorney for Plaintiff,
                                                        Betsy Wolf