**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BETSY WOLF,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **TEMPLE UNIVERSITY,** | **NO.  21-866** |
| **Defendant.** | |

## MEMORANDUM OPINION

For thirteen years, Plaintiff Betsy Wolf met and exceeded expectations as an administrator for Defendant Temple University.  Then one day, when she was sixty-seven years old and had attained the title of Senior Administrator, she was informed that her position was being eliminated due to department restructuring.  After her termination, Plaintiff filed a complaint of discrimination with the Pennsylvania Human Relations Commission.  Though she subsequently applied for several Senior Administrator positions posted by Defendant, she never received an interview.  In February 2021, Plaintiff filed suit for age discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"); the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951, *et seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, Phila. Code, § 9-1101 *et seq.* ("PFPO").  Defendant filed a Motion for Summary Judgment.  For the reasons that follow, Defendant's Motion will be denied in part and granted in part.

### I.    FACTUAL BACKGROUND

Throughout her employment at Temple, Plaintiff worked in the Department of Medicine at the Temple University Lewis Katz School of Medicine.  The Department is part of Temple

University Physicians ("TUP"), the practice plan through which Temple's physician faculty members treat patients.  Since at least 2010, TUP has been experiencing financial constraints that forced its leadership to cut costs and devise new operational efficiencies in order to stay within budget.  TUP leadership has sought opportunities to have administrators cover more than one department.  Some layoffs attributed to financial reasons occurred at the School of Medicine between 2016 and 2018.  Thomas Kupp, the Senior Vice Dean for Finance and Administration and the Executive Director of TUP, testified that these financial issues arose primarily from the fact that the majority of TUP's patients are funded by Medicaid, and many Medicaid payers have not increased their rates for many years.  As a result, TUP's revenue growth has not matched its expenses.

Defendant hired Plaintiff on March 1, 2005, and promoted her three times.  The third time occurred in 2016, when she became the Senior Administrator of the Department of Family Medicine.  Measured by faculty numbers and budget size, Family Medicine was one of the two smallest departments within TUP.  In her position as Senior Administrator, Plaintiff was consistently evaluated as meeting or exceeding expectations.  In one annual evaluation, Vice Dean Kupp described her work as "outstanding," and he testified that her evaluations showed that she was an employee who Defendant would want to retain.  Lisa Fino, TUP's Chief Operating Officer, testified that Plaintiff was "very competent" and "an asset" to Defendant.

Plaintiff's time at Temple University was clouded by a disturbing incident that occurred in November 2017—someone drew a swastika on the wall underneath her office nameplate. Plaintiff, who is Jewish, was devastated and shaken.  Defendant never apprehended the culprit and Plaintiff expressed her dissatisfaction with its investigation through internal complaints.  She complained to the Anti-Defamation League about Defendant's response within days of the

incident.  In December 2017, Plaintiff sent a letter to Dr. Larry Kaiser, the Dean of the School of

Medicine, complaining that that Defendant had taken no action since the incident and that

university security had reported it as vandalism rather than a hate crime.  In January 2018,

Plaintiff emailed Dr. Richard Englert, the President of Temple University, characterizing

Defendant's response as "woefully lackluster, [and] unsupportive," and strongly expressing her

disappointment with how the incident had been handled.

Meanwhile, the School of Medicine continued to look for situations in which a single

administrator could take on more than one department and in February 2018, Fino approached

Plaintiff about taking on the administrative responsibilities of Dermatology in addition to her

role in Family Medicine.  Plaintiff testified that she was resistant to the idea because the

Department of Family Medicine was getting a new Chair in March, Dr. Margot Savoy.  Plaintiff

understood that Dr. Savoy had a "very large agenda" planned for Family Medicine and expected

Plaintiff to be her full-time administrator.  Plaintiff accordingly asked Fino to have a

conversation with Dr. Savoy.  In March, Dr. Savoy did speak with Fino and Kupp about splitting

Plaintiff's administrative duties and she raised some concerns about what it would mean.

Defendant never discussed this option with Plaintiff again.

By May 2018, the Family Medicine Department had a large budget gap.  Staff layoffs

were among the solutions being considered to remedy it.  On June 7, Defendant issued a letter to

Plaintiff informing her that her position was being eliminated due to department restructuring.

Fino, who is eight years younger than Plaintiff, took over Plaintiff's administrative

responsibilities in Family Medicine on top of her own job as Chief Operating Officer.  Around

September 2020, the combined senior administrative responsibilities of the Family Medicine and

Dermatology Departments were reassigned to one Amala Davis, an employee twenty-five years

younger than Plaintiff.  Davis, an administrator in the Radiology Department at TUP, was reassigned to this dual administrator position without applying for it.  She received a salary increase of $18,000, earning $15,000 more than Plaintiff had been making at the time of her termination.

Between November 2018 and November 2019, Plaintiff applied to several Senior Administrator positions posted by Defendant.  She was never interviewed or hired.  On December 3, 2018, Plaintiff filed an administrative complaint with the Pennsylvania Human Relations Commission, alleging age and religious discrimination.

Plaintiff filed her Complaint in the present action on February 25, 2021, asserting claims under Title VII, the ADEA, the PHRA, and the PFPO.  Her claims fall into five categories: (1) discriminatory age-based termination; (2) discriminatory age-based failure to rehire; (3) retaliatory termination, based on internal complaints about the swastika incident investigation; (4) retaliatory failure to rehire, based on same; and, (5) retaliatory failure to rehire, based on the PHRC complaint.

## II.   LEGAL STANDARDS

To prevail on a summary judgment motion, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A factual dispute is material if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.  "A

genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

The movant bears the initial burden of identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Then, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.  "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256.  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal citation omitted).

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on summary judgment. *Anderson*, 477 U.S. at 255.  The summary judgment standard "is applied with added rigor in employment discrimination cases," *Stewart v. Rutgers Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (quoting *Robinson v. PPG Indus. Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994)), and "any doubts as to the existence of genuine issues of fact" must be resolved against the moving party. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981).

## III.    DISCUSSION

### A.  Discrimination Claims

Plaintiff brings claims for age discrimination and retaliation under Title VII, the ADEA, the PHRA, and the PFPO.[1]  Because such claims are analyzed under similar legal frameworks, they will be considered together.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (discrimination claims under Title VII, the ADA, the ADEA, and the PHRA are interpreted co-extensively); *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp.2d 373, 376 n.3 (E.D. Pa. 2000) (analyzing PFPO claims under Title VII standard).

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1); *see also* 43 Pa. C.S. § 955(a) (corresponding provision of the PHRA); Phila. Code § 9-1103 (corresponding provision of the PFPO).

Because Plaintiff relies on circumstantial evidence, the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).  Under the first step of the *McDonnell Douglas* framework, the employee bears the burden of establishing a *prima facie* case of discrimination.  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  "[T]he burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification]

---

[1] Plaintiff's Title VII discrimination claims must be dismissed because age is not a protected class under that statute, *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 465 n.4 (1982), and in her brief opposing summary judgment, Plaintiff conceded that she is not bringing any religious discrimination claims (nor does she purport to bring claims under any other Title VII protected class).

for the adverse employment action." *Id.* (first alteration added) (quoting *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)).  In the third and final step, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.*

### i.    *Discrimination Claim: Wrongful Termination*

"The elements of a *prima facie* case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis*, 808 F.3d at 644.

Defendant assumes that Plaintiff has made a *prima facie* case for age discrimination with regards to her termination.  Therefore, it is appropriate to proceed directly to the second step of the *McDonnell Douglas* analysis.  The employer's burden of proffering a legitimate non-discriminatory reason for its conduct is "relatively light" and "is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426.  "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Id.* (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

Temple has carried its burden.  It is undisputed that, at the time of Plaintiff's termination, TUP had been experiencing financial strain for years and was looking for ways to cut costs, including, at times, through layoffs.  Defendant introduced testimony that, in May 2018, the Family Medicine Department had a large budget shortfall, and that Plaintiff's position was

eliminated due to (1) TUP's financial circumstances; (2) Plaintiff's relative lack of seniority and small area of responsibility; and, (3) her perceived refusal to take on an additional department, which was one of the cost-cutting strategies favored by TUP.  Taken as true, these allegations permit the conclusion that Plaintiff was terminated due to budgetary constraints.

To show that Defendant's explanation is pretextual, Plaintiff need not proffer affirmative evidence of discrimination.  *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005).  But she "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  Plaintiff's evidence falls into the first category: reasonable disbelief.  "In order to raise sufficient disbelief, the evidence must indicate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons."  *Willis*, 808 F.3d at 644-45 (citing *Fuentes*, 32 F.3d at 765).  This standard requires the non-movant to "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."  *Kautz*, 412 F.3d at 467.

Plaintiff does not dispute that TUP has financial problems, but she points to evidence of various inconsistencies and incoherencies that cast doubt on the core facts supporting Defendant's reasons for eliminating her position.  The most significant are discussed below.

First, Plaintiff finds evidence of pretext in the fact that Defendant's witnesses do not agree about who made the decision to terminate Plaintiff.  Most significantly, Kupp testified that Zimmaro and Fino recommended Plaintiff's termination and that he approved their

recommendation, pending sign-off of his superiors—but Fino and Zimmaro denied any involvement.  Defendant argues that these "minor inconsistencies" are "not material" because they do not call into question the reasons for Plaintiff's termination.  But the witnesses' inability to agree on who contributed to the termination discussion and who made the final decision could cause a reasonable juror to doubt their testimony when it comes to the reason for Plaintiff's termination as well.

Second, while Kupp testified that Plaintiff's inability or unwillingness to take on additional responsibility was one of the reasons for her termination, Plaintiff pointed to record evidence of a factual dispute concerning the February 2018 meeting in which Fino approached Plaintiff about taking on the administrative responsibilities of Dermatology in addition to her role in Family Medicine.  Indeed, Defendant concedes that the Parties differ in their telling of this tale.

Plaintiff relies on the testimony of Kupp and Dr. Savoy to argue that she never received an official offer for the dual administrator position and that no such position existed in February 2018.  Plaintiff contends that she "simply requested Fino to hold off to have a conversation with" Dr. Savoy, the new Chair.  She blames Defendant for not following up with her after Dr. Savoy arrived, asserting that she would have taken on Dermatology rather than lose her job.  Defendant argues that Fino made Plaintiff an offer to become the Senior Administrator of Dermatology, which offer Plaintiff refused.  Alternatively, it submits that "it does not matter whether there was an actual offer or a more preliminary discussion," because the Parties agree that Plaintiff was resistant to accepting more responsibility.

The Parties' differing accounts do matter.  A reasonable juror could view the credibility of Defendant's asserted reasons for terminating Plaintiff differently, depending on whether she

refused a job offer or had a preliminary discussion—conditional on the views of the soon-to-arrive Dr. Savoy—about expanding her scope of responsibility.[2]  The Parties' dispute over these factual details cannot be resolved on summary judgment.

Plaintiff next argues that, contrary to Defendant's representations, her position was not eliminated.  Rather, she was replaced by, and her responsibilities were reassigned to, younger employees, first to Fino (eight years her junior) and, two years later, to Davis (25 years her junior).  Although Defendant argues that it *did* eliminate Plaintiff's position and that it did *not* replace her, it concedes that Fino, and later Davis, took on Plaintiff's responsibilities after her termination.  Drawing all reasonable inferences in Plaintiff's favor, the fact that all of Plaintiff's responsibilities were reassigned to younger employees could cause a reasonable jury to doubt whether Defendant's reasons for terminating her were pretextual.

The record evidence presented by Plaintiff calls into doubt core facts underlying Defendant's reasons for terminating her.  Although the evidence does not guarantee victory before a jury, taken together, the genuine disputes of material fact raised by Plaintiff could prompt a reasonable factfinder to disbelieve Defendant's explanation for Plaintiff's termination.  Summary judgment on Plaintiff's discriminatory termination claim is therefore precludes.

### ii.   Discrimination Claim: Failure to Rehire

Plaintiff also alleges that Defendant's failure to rehire her constituted age discrimination.  The Parties focus on only one of the positions for which Plaintiff applied: Senior Administrator

---

[2] Relatedly, Plaintiff argues that a "combined position of Senior Administrator for Family Medicine and Dermatology" *did* exist at the time of her termination in June 2018, and that Defendant's failure to discuss this new position with her in June, despite her undisputedly good performance, is evidence of pretext.  Whether or not a "combined position" existed prior to Plaintiff's termination is a question of material disputed fact for the jury.

of Psychiatry.[3]  Zimmaro testified that this position opened up in late 2018, when the employee

in that role was transferred to Temple's student counseling services.  Zimmaro knew that

Plaintiff had applied for the job, but she was never interviewed or hired.  Instead, Defendant had

Colleen McAllister, then Senior Administrator for Pathology, cover both departments.

McAllister is about fifteen years younger than Plaintiff.

 Defendant's legitimate non-discriminatory explanation for not rehiring Plaintiff is its

ongoing financial troubles.[4]  Specifically, Defendant points to Zimmaro's testimony that it

neither interviewed nor hired any external candidates for any of the positions posted, and that the

decision to have MacAllister fill the Psychiatry position in addition to her existing duties was

part of TUP's efforts to have administrators take on more responsibility because of the financial

situation.  Fino testified that Davis's reassignment was "net neutral" for TUP because Davis's

prior position was not replaced within TUP, but that rehiring Plaintiff would have entailed an

increased cost.  This evidence, taken as true, suffices to surmount the second step of *McDonnell*

*Douglas*.

 Plaintiff's only response to Defendant's justification is that: (1) she had an excellent

performance track record; (2) Defendant did not consider her for the position; (3) Defendant did

not mention her name to the Chair of Psychiatry; and, (4) Defendant did not make "any efforts to

help Plaintiff find a job within Defendant" after her termination.  In other words, Plaintiff argues

that she was a good employee who was not rehired.

 To raise a genuine dispute of fact about whether Defendant's reasons were pretextual,

---

[3] The Complaint alleges that Plaintiff applied to four positions: one in November 2018, two in December 2018, and one in November 2019, but it does not specify what departments they were for.  In her opposition brief, Plaintiff asserts that she applied to only three.

[4] Defendant did not assert that Plaintiff failed to make her *prima facie* case on this claim.

Plaintiff must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue,'" *Celotex Corp.*, 477 U.S. at 324, *i.e.*, an issue that could cause "a reasonable trier of fact" to "rationally find in favor of the non-moving party." *Abington Friends Sch.*, 480 F.3d at 256. The fact that Plaintiff was a good employee is conceded, but that fact is not inconsistent with Defendant's financial justifications for not rehiring her. Good employees may sometimes be terminated for financial reasons, and it would not be rational for a reasonable trier of fact to find in Plaintiff's favor solely on the ground that she was good at her job and that Defendant did not help her find a new one.

As Plaintiff has not identified any record evidence that would support a genuine dispute of material fact about whether Defendant's financial justification for not rehiring her is pretextual, she has not met her burden and her failure to rehire discrimination claim must be dismissed.

### B. Retaliation Claims

#### i. *Retaliation Based on Complaints about Age Discrimination*

Plaintiff argues that Defendant did not address her claim of retaliation under the ADEA (the one based on her PHRC complaint), and that therefore Defendant has not moved for summary judgment on that claim. Indeed, the only mention Defendant makes of this claim in its opening brief is tucked into a footnote:

> It is unclear whether [Plaintiff] is asserting a claim for retaliation under the ADEA. If she is asserting such a claim, it fails at the prima facie stage because she never asserted any predicate complaints related to age.[5]

---

[5] Although Defendant found Plaintiff's assertion of her ADEA retaliation claim "unclear," it never outright argued that the claim was not asserted. Indeed, the Complaint plainly alleges that Defendant violated the ADEA "[b]y committing the foregoing acts of discrimination and retaliation against Plaintiff." The retaliation claim is supported by the Complaint's factual allegation that Plaintiff filed a complaint of age discrimination with the Pennsylvania Human Relations Commission in December 2018, which was before Defendant filled the position of Senior

In its reply brief, Defendant argued that it did move on all of Plaintiff's claims, pointing to another footnote in its opening brief that states: "[t]his motion covers all of Plaintiff's claims in the complaint."  It then sought to "incorporate" on reply all of the substantive arguments it had made in response to Plaintiff's other retaliation claims in its opening brief.

"An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice.'"  *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (ellipsis in original) (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir. 1991)), *cert. denied*, 513 U.S. 946 (1994).  Furthermore, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."  *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

Defendant's briefs run afoul of both these rules.  It cannot rely on a footnote to show that it moved for summary judgment on all of Plaintiff's claims.  And its only substantive arguments against the ADEA retaliation claim were raised in passing, first in a footnote and then on reply.  Defendant accordingly waived these arguments and Plaintiff's claim that Defendant retaliated against her under the ADEA due to the administrative complaint she brought before the PHRC will not be dismissed.

### ii.    Retaliation Based on Complaints about Defendant's Investigation into the Swastika Incident

The ADEA prohibits an employer from retaliating against an employee because she "has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).

---

Administrator of Psychiatry in February 2019.

"Under the *McDonnell Douglas* framework, a plaintiff asserting a retaliation claim must establish a *prima facie* case by showing: '(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).[6] Plaintiff alleges that she was terminated because of her repeated complaints about Defendant's investigation into the swastika drawn on the wall outside her office.

Defendant contends that Plaintiff has not made out a *prima facie* case of retaliation because she has not shown a causal link.[7] Defendant points to a number of facts in support of this contention: (1) Plaintiff's complaints, made from November 2017 to January 2018, are too temporally remote from her termination in June 2018; (2) Plaintiff conceded at her deposition that no one told her they were annoyed or angered by her complaints; (3) Kupp testified that neither he nor Dr. Kaiser nor Zimmaro were upset or frustrated by Plaintiff's complaints; (4) Zimmaro testified that he never concluded that anyone at Temple was annoyed by the complaints, and that "[p]eople were positive saying yeah, good, she can go ahead"; and, (5) Plaintiff was offered additional responsibility as an administrator after she made those complaints.

Plaintiff argues that she can establish causation because she was terminated "just a few months" after complaining about the Defendant's investigation into the swastika incident. "To

---

[6] The retaliation standard is the same for the ADEA, PHRA, and PFPO. *See Daniels*, 776 F.3d at 192-93 (treating Title VII, PHRA, and ADEA retaliation claims the same); *Tomaszewski v. City of Phila.*, 460 F. Supp.3d 577, 599 (E.D. Pa. 2020) (treating Title VII, PHRA, and PFPO retaliation claims the same).

[7] Defendant does not challenge any other elements of Plaintiff's *prima facie* case.

demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" *Daniels*, 776 F.3d at 196. "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007), the five months that elapsed between January 2018, when Plaintiff made her last complaint, and June 2018, when she was terminated, is not "unusually suggestive." *See LeBoon*, 503 F.3d at 233 (three-month gap between the protected activity and the adverse action did not alone establish a causal link); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (five-month period did not alone establish a causal link).

"In the absence of such a close temporal proximity, [courts] consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196. The only evidence Plaintiff offers of other circumstances suggesting retaliatory animus are (1) Zimmaro's failure to take steps to ascertain whether her complaints about the swastika incident were a factor in the decision to terminate her; and, (2) her general challenge to the credibility of the witnesses' representations that they were not upset about her complaints.

Zimmaro's testimony, read in context, does not suggest a causal link between her termination and the internal complaints Plaintiff made between November 2017 and January 2018:

> Q: When you have the June 1st discussion with Kupp in which he tells you that the decision has been made to lay her off, at any point between June 1st and June 7th when she is notified, do you do anything to ascertain whether or not her complaints about Temple's failure to take appropriate action in connection with the swastika incident is a factor in the decision to terminate her employment?

15

A: That was not even discussed or even thought of or brought up.

Q: Okay. So is that a no?

A: That's no.

Zimmaro's full answer shows that the reason Zimmaro took no action to reassure himself that Plaintiff's internal complaints played no role in her termination was because, in early June, no one mentioned them and he did not think about them. This testimony cuts against the existence of a causal link.

Furthermore, Plaintiff cannot create a genuine dispute of material fact by raising a non-specific blanket challenge to the witnesses' credibility. It is true that "intent and credibility are crucial issues" in employment discrimination cases, *Stewart*, 120 F.3d at 431, and that courts "should not resolve any genuine issues of credibility." *Ness*, 660 F.2d at 519. But Plaintiff must still carry her burden of persuasion. *Daniels*, 776 F.3d at 193 ("[P]laintiff has the ultimate burden of persuasion at all times."). To raise a genuine issue of fact, she must point to the record. *Abington Friends Sch.*, 480 F.3d at 256. Even when liability turns on the defendant's state of mind, the nonmoving party "cannot defeat summary judgment simply by asserting that a jury might disbelieve" the defendant's assertions that he or she lacked the requisite mental state. *See Williams*, 891 F.2d at 460. Plaintiff may rely on circumstantial evidence, but she cannot rely on nothing. *See Id.* (plaintiff must show "more than a scintilla" of direct or circumstantial evidence to raise a sufficient issue of fact concerning defendant's state of mind).

Here, Plaintiff did not cite to the record at all in challenging the witnesses' credibility; she has therefore failed to raise a genuine dispute of material fact about whether they were upset by her internal complaints.[8] Accordingly, she has not made out a *prima facie* case of retaliation

---

[8] Plaintiff also alleged that Defendant's failure to rehire her was retaliation against her for complaining about the

for her complaints about the swastika incident investigation because she has not shown a causal link between her internal complaints and her termination.

## IV.   CONCLUSION

Although "[s]ummary judgment is to be used sparingly in employment discrimination cases," *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008), it must be granted if the non-movant has not carried her burden of persuasion. *Daniels*, 776 F.3d at 193.

Plaintiff has not carried that burden on her claim of a discriminatory failure to rehire. Nor did she raise a genuine dispute of material fact on the retaliation claims that arise out of her internal complaints about the swastika incident investigation.

However, Plaintiff did muster sufficient evidence to survive summary judgment on her discriminatory termination claim. Furthermore, her claim that Defendant's failure to rehire her was in retaliation for her PHRC complaint will not be dismissed because Defendant did not address it.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**

---

swastika incident investigation. The only discernable ground raised by Plaintiff to show a causal link between her internal complaints and the failure to rehire her is the same wholesale challenge to the witnesses' credibility. Therefore, Plaintiff did not make a *prima facie* case on this claim either.